1  Michael Gerard Fletcher (State Bar No. 070849)
     mfletcher@frandzel.com
2  Tricia L. Legittino (State Bar No. 254311)
     tlegittino@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
4  Seventeenth Floor
   Los Angeles, California 90048-4920
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6
   Attorneys for Movants/Appellants
7  Dynamic Finance Corporation and Angela C. Sabella

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 In re | District Case No. 08-CV-01194-W-CAB |
| 12 NORTH PLAZA, LLC, | Bankruptcy Court No. 04-00769-PB11 |
| 13 Debtor. | Appeal No. 2 |
| 14 _____ | |
| 15 DYNAMIC FINANCE CORPORATION and ANGELA C. SABELLA, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR STAY PENDING APPEAL OF BANKRUPTCY COURT ORDER** |
| 16 | |
| 17      APPELLANTS, v. | [Filed concurrently with Notice of Motion and Motion For Stay Pending Appeal; Declaration of Michael G. Fletcher; and Request for Judicial Notice] |
| 18 CHAPTER 11 TRUSTEE RICHARD KIPPERMAN, | |
| 19 | |
| 20      APPELLEE. | DATE:          TO BE SET TIME:          TO BE SET COURTROOM:  SEVEN |
| 21 | |
| 22 | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION..............................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND……....……..2

    A.  Background Facts……………………………………………...……………2

    B.  Appeal Status…………………………………..…………………………4

    C.  Bankruptcy Court's Denial of Motion to Stay the Order

        Pending Appeal…………………………………………………..……..5

III.  ARGUMENT…………………………………………………………....6

    A.  Standard For Granting s a Stay Pending Appeal………………………….6

    B.  Dynamic/Sabella are Likely to Succeed On Appeal Because the

        Bankruptcy Court Erred By Applying the Wrong Law to Determine

        the Scope of the Attorney Client Privilege …………………………..8

    C.  The Relative Hardships to the Parties Favors a Stay Pending

        Appeal…………………………………………………………………18

    D.  Staying the Order Serves the Public's Interest……………………..…20

IV.  CONCLUSION……………………………………………...…………21

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR STAY PENDING APPEAL

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### **FEDERAL CASES**

4

<u>A&M Records, Inc. v. Napster, Inc.,</u>
    284 F.3d 1091 (9th Cir. 2002) ........................................................................................ 7, 8

5

<u>Admiral Insurance Co. v. U.S. District Court,</u>
    881 F.2d 1486 (9th Cir. 1989) ............................................................................................ 18

6

7

<u>Agster v. Maricopa County,</u>
    422 F.3d 836 (9th Cir. 2005) .............................................................................................. 19

8

9

<u>Alaska v. Native Village of Venetie,</u>
    856 F.2d 1384 (9th Cir. 1988) .............................................................................................. 7

10

<u>Amco Insurance Co. v. Madera Quality Nut LLC,</u>
    2006 U.S. Dist. LEXIS 21205 (E.D.Cal. 2006) ............................................................... 14

11

12

<u>Atmel Corp v. St. Paul Fire & Marine Insurance Co.,</u>
    409 F. Supp. 2d 1180 (N.D.Cal. 2005) ............................................................................. 10

13

14

<u>Baird v. Koerner,</u>
    279 F.2d 623 (9th Cir. 1960) .............................................................................................. 17

15

16

<u>In re Bautista,</u>
    2007 Bankr. LEXIS 4170 (Bankr. N.D.Cal. 2007) .......................................................... 14

17

<u>Benda v. Grand  Lodge of International Association of Machinists,</u>
    584 F.2d 308 (9th Cir. 1978) ................................................................................................ 7

18

19

<u>In re Bieter Co.,</u>
    16 F.3d 929 (8th Cir. 1994) ................................................................................................ 18

20

21

<u>Bittaker v. Woodford,</u>
    331 F.3d 715 (9th Cir. 2003) ......................................................................................... 18, 19

22

23

<u>Covell v. Heyman,</u>
    111 U.S. 176 (1884) ........................................................................................................... 16

24

25

<u>Darr v. Burford,</u>
    339 U.S. 200 (1950) ........................................................................................................... 16

26

<u>In re Ford Motor Co.,</u>
    110 F.3d 954 (3d Cir. 1997) ............................................................................................... 18

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR STAY PENDING APPEAL

Garrison v. General Motors,
    213 F. Supp. 515 (S.D.Cal. 1963) ...................................................................... 17

In re Grand Jury Subpoenas,
    995 F. Supp. at 334 ............................................................................................ 11

Hamilton v. Lumsden (In re Geothermal Resources),
    93 F.3d 648 (9th Cir. 1996) ............................................................................... 15

Hilton v. Braunskill,
    481 U.S. 770 (1987) ............................................................................................. 7

In re International Horizons,
    689 F.2d 996 (1982 11th Cir) ....................................................................... 14, 15

In re Johnson,
    960 F.2d 396 (4th Cir. 1992) ............................................................................. 15

Leon v. County of San Diego,
    202 F.R.D. 631 (S.D.Cal. 2001) ........................................................................ 16

Lopez v. Heckler,
    713 F.2d 1432 (9th Cir. 1983) ............................................................................. 7

Los Angeles Mem'l Coliseum Commission v. National Football League,
    634 F.2d 1197 (9th Cir. 1980) ............................................................................. 8

In re Lott,
    139 Fed.Appx. 658, 662 (6th Cir. 2005) ........................................................... 18

Lynch v. Ca. Public Utility Commission,
    2004 U.S. Dist. LEXIS 6022 (N.D. Cal. 2004) ................................................... 7

Mayweathers v. Newland,
    258 F.3d 930 (9th Cir. 2001) ............................................................................... 7

Mamula v. Satralloy, Inc.,
    578 F. Supp. 563, 580 (S.D. Ohio 1983) ............................................................ 8

Memry Corp. v. Ky. Oil Tech., Nv.,
    2007 U.S. Dist. LEXIS 3094 (N.D. Cal. 2007) ................................................. 18

In re Napster,
    479 F. 3 .............................................................................................................. 18

In Re Napster,
    479 F.3d 1078 (9th Cir. 2007) ................................................................. 4, 5, 20

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

iii

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR STAY PENDING APPEAL

National Resources Defense Council, Inc. v. Southwest Marine, Inc.,
    242 F.3d 1163 (9th Cir. 2001)........................................................................ 7

Newton v. Consolidated Gas Co.,
    258 U.S. 165 (U.S. 1922) ............................................................................... 7

Overstreet v. Thomas Davis Medical Ctrs., P.C.,
    978 F. Supp. 1313 (D. Ariz. 1997)................................................................. 8

In re Perrigo Co.,
    128 F.3d 430 (6th Cir. 1997)......................................................................... 18

Star Editorial, Inc. v. U.S. District Court,
    7 F.3d 856 (9th Cir. 1993)............................................................................ 14

Taxel v. Equity Gen'l Insurance Co. (In re Couch),
    80 B.R. 512 (S.D.Cal. 1987) ........................................................................ 15

U.S. v. Chen,
    99 F.3d 1495 (9th Cir. 1996)........................................................................ 20

U.S. v. Griffin,
    440 F.3d 1138 (9th Cir. 2006)...................................................................... 18

U.S. v. Philip Morris Inc.,
    314 F.3d 612 (D.C. Cir. 2003) ..................................................................... 19

U.S. v. Sanford (In re Sanford),
    979 F.2d 1511 (11th Cir. 1992) .................................................................... 15

Upjohn Co. V. United States,
    449 U.S. 383 (1981) ............................................................................... 19, 21

Younger v. Harris,
    401 U.S. 37 (1971) ....................................................................................... 16

**STATE CASES**

County of San Francisco v. The Superior Court of the City and County of San Francisco,
    37 Cal.2d 227, 236 (1951)....................................................................... 11, 16

Insurance Co. of North America v. Sup. Crt.,
    108 Cal. App. 3d 758 (1980) ........................................................................ 10

In re Jordan,
    7 Cal. 3d 930 (1972)..................................................................................... 10

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Kouba v. Allstate Ins. Co.,
    No. S-77-99 (LKK), 1981 WL 278 (E.D. Cal. Nov. 12, 1981).........................................8

Park Terrace LTD v. Teasdale,
    100 Cal. App. 4th 802 (2002).................................................................................13


**FEDERAL STATUTES**

28 U.S.C. § 157 (b) (1).................................................................................................3

28 U.S.C. § 158 .............................................................................................................4

FRCP 26(b) (1) ............................................................................................................13

Rule 8(a)(2) .................................................................................................................6


**STATE STATUTES**

California Evidence Code § 952 .............................................................................9, 10

California Evidence Code Section 951 ........................................................................10


**SECONDARY SOURCES**

10 *Collier on Bankruptcy* ¶ 3.01 [3]..........................................................................3

10 *Collier on Bankruptcy* ¶ 8005.01 p.8005-2 (15th Ed).........................................5

*Moore's Federal Practice* §§ 308.10-308.11 p.308-8 - 308.12 (3d Ed)...............5, 6, 7

Dorothy W. Nelson, et al., *Federal Ninth Circuit Civil Appellate Practice* §§ 6.267-6.268
    (2001) .......................................................................................................................7

Wright & Graham, *Federal Practice and Procedure*: Evidence Section 5421
    fn.53 pp.656-657………………………………………………………………….14

Frandzel Robins Bloom & Csato, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048-4920
(323) 852-1000

v

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR STAY PENDING APPEAL

# MEMORANDUM OF POINTS AND AUTHORITIES

Movants/Appellants Dynamic Finance Corp. and Angela C. Sabella (collectively "Dynamic/Sabella" or "Privilege Holders") submit this Memorandum of Points and Authorities in support of their Motion to Stay enforcement of the Bankruptcy Court's Order entered June 2, 2008 (the "Order") compelling disclosure of documents claimed by Dynamic/Sabella to be protected by the attorney client privilege.

## I.

## INTRODUCTION

The Court should stay enforcement of the Bankruptcy Court's Order to produce information protected by the attorney client privilege. Without a stay, Dynamic/Sabella will be substantially and irreparably harmed when the privileged communications are disclosed while the appeal is pending.   Should the District Court later determine that the Bankruptcy Court incorrectly compelled disclosure, Dynamic/Sabella will have been deprived of any meaningful right of appeal as a practical matter.

Further, appropriately weighing the four factors considered for a discretionary stay, the equities tilt strongly toward granting the stay because of (i) the significant, irreparable injury to Dynamic/Sabella from denying the stay, (ii) the lack of any appreciable harm to the estate from delay in enforcement of the Order, (iii) the likelihood of success, after due consideration of the prominent and critical role the attorney client privilege plays in our judicial system, of Dynamic/Sabella's appeal of the Order regarding the appropriate scope of the attorney client privilege when civil claims based on state law are adjudicated in federal courts; and finally, (iv) the public interest in affording complete due process before federal courts invade the time-honored and widely recognized attorney client privilege established under California law.

A stay in this case is particularly appropriate because the law underpinning the Order implicates substantial and complex issues concerning the interplay among states' rights, federalism, comity, and choice of law.  Dynamic/Sabella respectfully submit that the Bankruptcy Court erred in arriving at its Order by, *inter alia*, applying the wrong body of law to determine the

1   scope of the attorney client privilege in this specific situation.  Once the procedural posture of the

2   issue underlying the discovery is assessed, analysis of Federal Rule of Evidence 501 and

3   applicable case law yields the conclusion that the Bankruptcy Court should have applied

4   California's well-developed law setting the scope of the attorney client privilege in this situation,

5   not federal common law and certainly not the state law from Connecticut, Michigan, New York or

6   Florida.  California law would protect the information from disclosure on the facts of this matter

7   and therefore would reverse the Order.

8                                             **II.**

9                   **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

10  **A.**      **Background Facts**

11          In July 1998, the debtor in the underlying bankruptcy action, North Plaza, LLC, entered

12  into a Loan Agreement with Dynamic which was secured by the debtor's real property. The

13  President of Dynamic, Angela Sabella, purchased a loan junior to Dynamic's but which was also

14  secured by a deed of trust on the North Plaza property. Both of these "North Plaza Loans" were

15  made and arranged on Dynamic's and Sabella's behalf by a licensed California real estate broker,

16  Isaac Lei ("Lei") and his company the Alcon Group ("Alcon" and collectively "Lei/Alcon").  In

17  order for Lei/Alcon to adequately accomplish their brokerage duties, both Dynamic and Sabella

18  authorized Lei to meet with their respective legal counsel to obtain legal advice in connection with

19  the loans to North Plaza.

20          In 2004, North Plaza was forced into Chapter 11 Bankruptcy.[1] Dynamic and Sabella timely

21  asserted their secured claims against North Plaza and are the largest secured creditors of the estate.

22  Later that same year, the land was sold, thus the North Plaza bankruptcy estate currently consists

23  solely of cash.

24          The amount and legal substance of Dynamic's and Sabella's secured claims against the

25  bankruptcy estate have been the main focus of the proceedings (and related adversary

26  _____

27  [1] Concurrent with the filing of this Motion, Dynamic and Sabella are filing a Request for Judicial
    Notice ("RFJN"). The Order for Relief is Exhibit 1 to the RFJN.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  proceedings) in this bankruptcy case since an objection to settlement of their claims was filed on

2  September 8, 2005. [2] Proceedings to determine the amount and legal substance of claims against

3  the bankruptcy estate are "core proceedings" related to cases under Title 11. [3]

4        In June 2006, the Bankruptcy Court appointed Chapter 11 Trustee Richard Kipperman to

5  represent the bankruptcy estate.  In February 2007, the Trustee issued subpoenas to Lei/Alcon.

6  Lei and Alcon provided documents pursuant to the subpoenas, but they also served the Trustee

7  with an amended privilege log asserting the attorney client privilege as to a number of documents

8  in relation to communications between them and Dynamic/Sabella's legal counsel directly relating

9  to legal advice sought by Dynamic/Sabella in connection with loans extended to the Debtor and

10 

11 other entities in which the managing member of the Debtor held an interest

12       Despite attempts by the parties to resolve these issues, the Trustee filed a Motion to

13 Compel Responses for Documents and Testimony pursuant to the subpoenas issued to Lei and

14 Alcon ("Motion to Compel"). [4]  On May 29, 2007, Lei/Alcon and Dynamic/Sabella filed an

15 Opposition to the Trustee's Motion to Compel ("Opposition"). [5]  In connection with the Opposition,

16 Lei and Sabella provided declarations in which it was established that Dynamic/Sabella authorized

17 Lei/Alcon to communicate with their attorneys to secure legal advice during the course of

18 negotiating and documenting the loans which Lei/Alcon were brokering on behalf of

19 Dynamic/Sabella with North Plaza and the other entities owned by its managing member. [6]

20       In March of this year, the Bankruptcy Court held a three day evidentiary hearing to

21 determine if the scope of the attorney client privilege covered communications between legal

22 

23 [2] The Memorandum Of Points And Authorities In Opposition Re Motion For Order: (1)
   Approving Settlements With Secured Creditors is RFJN Exhibit 2 and the Order On Motion To
24 Approve Settlement is RFJN Exhibit 3.

25 [3] 28 U.S.C. § 157 (b) (1) & (2); *See also*, 1 *Collier on Bankruptcy* ¶ 3.01 [3] [c] (15th Ed.).

26 [4] The Trustee's Motion to Compel is Exhibit 6 to the RFJN.

27 [5] RFJN Exhibits 7 and 10.

28 [6] RFJN Exhibits 9 (Sabella Declaration) and 8 (Lei Declaration).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    counsel and Lei/Alcon as well as any legal advice related communications between Lei/Alcon and

2    Dynamic/Sabella. At the hearing Dynamic/Sabella presented testimony from three witnesses: Lei,

3    Sabella and Richard Gruber, Dynamic's and Sabella's attorney who primarily dealt with Lei while

4    he was arranging and negotiating the loans with the Debtor. The Trustee presented no witnesses.

5    Additionally, at the hearing, Dynamic/Sabella offered into evidence forty-one exhibits.  In

6    connection with the evidentiary hearing the parties submitted pre-hearing briefs in which they set

7    forth the law and argued their respective positions.[7]

8         On June 2, 2008, the Bankruptcy Court entered an Order granting the Trustee's Motion to

9    Compel because the scope of the attorney client privilege did not extend to these communications.

10   *See,* RFJN Exhibit 13.  The Court's holding is based on two key findings.  First, the Court found

11   that "this case is about a personal relationship between Sabella and Lei implemented to carry out

12   Sabella's lending business…Thus, the applicable authority is those cases considering the

13   application of the 'client representative' extension of the attorney client privilege to individuals."

14   RFJN PP. 212-213.  Second, the Court held that there was "no reason to extend the exception [to

15   the attorney client privilege] to cover communications between Lei and counsel for Sabella. The

16   parties asserting the exception have established no "disability" which required Lei to communicate

17   with counsel on Sabella's behalf."  RFJN PP. 214-215.

18   **B.    Appeal Status**

19        Dynamic and Sabella timely filed a Notice of Appeal of the Order on June 9, 2008.[8]  28

20   USC § 158; FRBP 8001(a), 8002(a).  Appellee/Trustee filed an election to have the appeal heard

21   in the District Court.  28 USC § 158(c) (1); FRBP 8001(e).[9]  The District Court has jurisdiction

22   over this appeal of a final order in a core proceeding related to a bankruptcy case.  The standard of

---

23   [7] The Privilege Holder's Pre-Hearing Brief is RFJN Exhibit 11 and their Post Hearing Brief is
24   RJFN Exhibit 13.

25   [8] RFJN Exhibit 14. Pursuant to *In Re Napster*, 479 F. 3d 1078, 1088 (9th Cir. 2007) orders vitiating
26   claims of privilege qualify under the collateral order doctrine for immediate appeals because the
     right of a client to preserve privileged communications with his or her counsel is "too important to
27   be denied review…"

     [9] RFJN Exhibit 18.

28

1  review of the Order, which vitiates the attorney client privilege, involves mixed questions of law

2  and fact and is reviewed *de novo*, especially when it concerns the scope of the privilege.[10]

3  However, the Order itself is not being reviewed via this Motion to Stay.

4  **C.    Bankruptcy Court's Denial of Motion to Stay the Order Pending Appeal.**

5       There is no automatic stay from enforcement of the Bankruptcy Court's Order during the

6  appeal.[11]  Requests for relief from enforcement pending appeal must first be sought from the

7  Bankuptcy Court.  FRBP 8005, adapted from FRAP 8(a).  Therefore, on June 12, 2008, Dynamic

8  and Sabella timely moved the Bankruptcy Court for an order staying enforcement of the Order

9  until the pending appeal was decided.[12]

10      On July 2, 2008, the Bankruptcy Court declined to stay enforcement of its Order pending

11  appeal.[13]  Although the Bankruptcy Court stated that it "wrestled with this particular motion for a

12  couple of reasons," it ultimately denied Dynamic/Sabella's Motion for Stay because it did not find

13  that "all the prongs of the test have been satisfied." RFJN PP. 306, 308. Specifically, the Court

14  stated it was "not persuaded that the possibility of success on the merits [of Dynamic/Sabella's

15  appeal], however remote, is sufficient unto itself independent of irreparability or even dependent

16  on irreparability sufficient to satisfy the test". RFJN PP. 307-308.  As to the irreparable harm

17  Dynamic and Sabella will incur if the Order is not stayed pending the Appeal, the Court said, "So

18  to say that it is automatically irreparable [sic] in the, you know, in the denotative sense of the word

19  irrepairable [sic] gives me some pause because I'm not persuaded that that's necessarily so." RFJN

20  P. 308. However, with regard to the balance of the hardships between Dynamic/Sabella and the

21  Trustee, the Court said, "I do agree, in the abstract, that the context of this case, you know, as long

22  ----

[10] *In re Napster*, 479 F.3d 1078, 1089-1090 (9th Cir. 2007).

23  [11]  Even if FRBP 7062 applied, that stay lasts only ten days after entry of the Order.  *See also*, 10
    *Collier on Bankruptcy* ¶ 8005.01 p.8005-2 (15th Ed); *See also*, 20 *Moore's Federal Practice* §§
24  308.10-308.11 p.308-8 – 308.12 (3d Ed.).

25  [12] Dynamic/Sabella's Motion for Stay are attached as Exhibit 15 and 16 to the RFJN. The Trustee's
    Opposition to the Motion for Stay is Exhibit 17 to the RFJN. Dynamic/Sabella's Reply is at RFJN
26  Exhibit 19.

27  [13] The Bankruptcy Court's minute order denying Dynamic/Sabella's Motion for Stay is Exhibit 20
    of the RFJN. The transcript of the Court's ruling is Exhibit 21 of the RFJN.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  as it's taken up to this point in time, is not going to impose irreparable harm to the Trustee to have

2  to await the results of an appeal." RFJN P. 308.

3       If the Order is enforced and the potentially privileged information is disclosed now,

4  winning the appeal later may be a hollow victory.  In the event that Dynamic/Sabella's appeal is

5  successful the return or destruction of the privileged documents and information will not be a fully

6  effective remedy, thus unnecessarily causing irreparable injury to Dynamic/Sabella. Therefore,

7  Dynamic and Sabella quickly made this Motion to the District Court pursuant to FRBP 8005 and

8  8011 for an order staying enforcement of the Bankruptcy Court's Order until the appeal of the

9  Order is decided.[14]  The District Court is empowered to stay the effectiveness of the Order until

10  resolution of the appeal.[15]

11                                    **III.**

12                                **ARGUMENT**

13  A.    <u>**Standard For Granting s a Stay Pending Appeal.**</u>

14       Legislation, case law, and rules have long provided for a stay pending appeal as a matter of

15  right for money judgments where sufficient monetary collateral is posted to maintain the *status*

16  *quo*.  *See*, *e.g.*, FRCP 62(a) & (d); 12 *Moore's Federal Practice* § 62.03[3] p.62-13 (3d Ed.).

17  Since money judgments rarely involve the public interest, this long standing practice implicitly

18  acknowledges that likelihood of success on the merits is entirely irrelevant where there is little or

19  no public interest at stake and the *status quo* can be maintained between the parties.

20       Of course, this matter involves a non-monetary order, so it is not so simple to maintain the

21  *status quo*.  Ninth Circuit case law implies that the goal, nonetheless, is to maintain the *status quo*

22

23

24  [14] Derived from Appellate Rule 8(a)(2); see also, 10 Collier on Bankruptcy ¶ 8005.10 (15th Ed)
    (motion for stay in District Court is proper procedure after Bankruptcy Court denies motion to stay
25  effectiveness of order pending appeal).

26  [15] FRBP 8005.

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  whether by action or inaction.[16]  To maintain the *status quo* during appeal of non-monetary

2  judgments, the courts have developed four factors to evaluate.  "The standard for evaluating stays

3  pending appeal is similar to that employed by the district courts in deciding whether to grant a

4  preliminary injunction."  *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983); see, *Lynch v. Ca.*

5  *Pub. Util. Comm'n*, 2004 U.S. Dist. LEXIS 6022 at *6 (N.D. Cal. 2004) (same evaluation if stay

6  sought under FRBP 8005).  When deciding a discretionary stay, the Court should **balance** the

7  following four factors:

8        (1) Movant's likelihood of success on the merits of the appeal;

9        (2) Significant and/or irreparable harm that will come to Movant absent a stay;

10        (3) Harm to the adverse party if a stay is granted; and

11        (4) Where the public's interests lie.

12  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); 20 *Moore's Federal Practice* § 308.21 p.308-15

13  (3d Ed.) This is **not** a test wherein each of the four prongs must be met by a preponderance of the

14  evidence.  Rather, the factors are "balanced" and the competing equities weighed such that one or

15  two factors supporting the stay may be sufficient to grant the stay where there is a weak showing

16  contra-indicating a stay.  *Id.*; Dorothy W. Nelson, et al., *Federal Ninth Circuit Civil Appellate*

17  *Practice* §§ 6.267-6.268 (2001).

18        "[T]he relative hardship to the parties is a 'critical element' in determining whether a stay is

19  warranted."  *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir. 1983) quoted by *Lynch v. Cal. Pub.*

20  *Util. Comm'n,* 2004 U.S. Dist. LEXIS 6022 at *7.  "If the balance of harm tips toward the

21  [movant], then the [movant] need not show as robust a likelihood of success on the merits…."

22  *Alaska v. Native Village of Venetie,* 856 F.2d 1384, 1389 (9th Cir. 1988) quoting *Benda v. Grand*

---

[16] *Mayweathers v. Newland*, 258 F.3d 930, 935-936 (9th Cir. 2001) (district court may enter second injunction during appeal if *status quo* maintained on appeal); *Nat'l Resources Defense Council, Inc. v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (district court may modify injunction during appeal if it preserves *status quo*); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002)(district court may not modify injunction pending appeal if that eliminates appeal or finally adjudicates rights under appeal) citing *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177 (U.S. 1922) (distribution of funds during appeal improper, other injunctive orders appropriate because preserves the *status quo*).

1  *Lodge of Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978).  Similarly, an appeal raising

2  serious and difficult legal issues in an unclear area of law has been held to be a sufficient showing

3  of likelihood of success on the merits.  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football*

4  *League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

5      The following detailed analysis of each of the four factors supports that the stay should be

6  granted.

7  **B.    Dynamic/Sabella are Likely to Succeed On Appeal Because the Bankruptcy Court**
   **Erred By Applying the Wrong Law to Determine the Scope of the Attorney Client**
8  **Privilege.**

9

10      As an initial matter, for the Court to issue a stay it is not necessary for Dynamic/Sabella to

11  prove that the Bankruptcy Court erred.  Instead, the likelihood of success on the merits factor is

12  satisfied because the Order addresses a difficult legal question and the equities dictate that the

13  *status quo* should be maintained.  *Id*.  *See also, Overstreet v. Thomas Davis Med. Ctrs., P.C.*, 978

14  F. Supp. 1313, 1314 (D. Ariz. 1997) (courts have found sufficient likelihood of success where

15  movant showed only that "the appeal raises serious and difficult questions of law in an area where

16  the law is somewhat unclear") (quoting *Mamula v. Satralloy*, Inc., 578 F. Supp. 563, 580 (S.D.

17  Ohio 1983)).

18      Several courts have recognized that under a literal application of the "likelihood of success

19  on appeal" factor, "a stay would seldom, if ever, be granted because the district court would have

20  to conclude that it was probably incorrect in its determination of the merits."  To resolve the

21  conundrum presented by such motions, these courts have concluded that "[w]hat is fairly

22  contemplated" by this factor "is that tribunals may properly stay their own orders when they have

23  ruled on an admittedly difficult legal question and when the equities of the case suggest that the

24  *status quo* should be maintained."  *Kouba v. Allstate Ins. Co.*, No. S-77-99 (LKK), 1981 WL 278,

25  at *3 (E.D. Cal. Nov. 12, 1981) (internal citations omitted).

26      The Court in the Northern District of California faced an almost identical situation in the

27  *Napster* litigation.  The Court ordered production of documents asserted to be protected by the

28  attorney client privilege.  The losing parties moved for a stay pending appeal.  The Court then

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  denied the motion to stay saying, "the court has serious doubts about [appellants'] likelihood of

2  success on the merits. A stay is therefore not appropriate at this time."[17] RFJN P. 327.

3  Notwithstanding the trial judge's assessment of the prospects on appeal, the Ninth Circuit issued

4  the stay immediately.[18]

5      In this case, even the Bankruptcy Court acknowledged that it "wrestled" with this motion.

6  RFJN P. 307. Here, the Order turns on a narrow and complex issue of law involving states' right,

7  comity, federalism,  and vertical choice of law issues.  Dynamic/Sabella will also show they have

8  a reasonable likelihood of success on the merits because the Bankruptcy Court erred as a matter of

9  law.

10      1.  <u>Lei/Alcon's Communications with Counsel are Privileged Under California Law</u>

11      From the very beginning of this discovery dispute, Privilege Holders have argued that

12  California law should apply.   In their Opposition to the Motion to Compel, Dynamic and Sabella

13  argued:

14          Dynamic/Sabella's assertion of the attorney client/privilege in the
            course of litigation with the Bree Parties was based on California law.
15          In that any objection by the Trustee to the Dynamic and Sabella
            claims would still have to be determined under California law, and in
16          that the period to initiate avoidance actions under the Bankruptcy
            Code has expired, it would appear that any claims for turnover would
17          have to be based on California law. Nevertheless if federal common
            law of privilege is to be applied, the qualified communications of
18          Lei/Alcon on behalf of Dynamic/Sabella remain privileged.

19  *See,* RFJN P. 96.

20      Dynamic and Sabella reiterated this argument in their Pre-Hearing Brief in which they set

21  forth an analysis of the California law on "client representative" which would readily hold as

22  privileged the communications between Lei/Alcon and the legal counsel.  Part of this analysis is as

23  follows:

24          In California, the attorney client privilege is codified in Evidence Code section 952
            which states:
25

26  _____

27  [17] Memorandum and Order filed May 17, 2006 attached as Exhibit 24 to the RFJN.

    [18] Minute Order filed May 19, 2006 attached as Exhibit 25 to the RFJN.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1          As used in this article, "confidential communication between
2   client and lawyer" means information transmitted between a client
    and his or her lawyer in the course of that relationship and in
3   confidence by a means which, so far as the client is aware, discloses
    the information to no third persons *other than those who are*
4   *present to further the interest of the client* in the consultation *or*
    *those to whom disclosure is reasonably necessary for the*
5   *transmission of the information or the accomplishment of the*
    *purpose for which the lawyer is consulted*, and includes a legal
6   opinion formed and the advice given by the lawyer in the course of
    that relationship.  (Emphasis added.)

7       Moreover, California Evidence Code Section 951 defines "client" as:

8          A person who, directly *or through an authorized representative*,
9   consults a lawyer for the purpose of retaining the lawyer or securing
    legal service or advice from him in his professional capacity, and
10  includes an incompetent (a) who himself so consults the lawyer or (b)
    whose guardian or conservator so consults the lawyer in behalf of the
11  incompetent. (Emphasis added).

12       As interpreted by California case law, "the privilege extends to communications which
13  are intended to be confidential, if they are made to attorneys, family members, business
    associates, or agents of the party or his attorneys on matters of joint concern, when
14  disclosure of the communication is reasonably necessary to further the interest of the
    litigant." *Ins. Co. of North America v. Sup. Crt.*, 108 Cal.App.3d 758, 766-67 (1980)
15  (holding that attorney client communications in the presence of, or disclosed to, clerks,
    secretaries, interpreters, physicians, spouses, parents, business associates, or joint clients,
16  when made to further the interest of the client or when reasonably necessary for
    transmission or accomplishment of the purpose of the consultation, remain privileged).  In
17  essence, if the communication is disclosed to a third party whose presence is necessary to
    advance the client's interest, or if the third party is an agent of the client or the attorney,
18  then the communication is covered by the attorney client privilege.  *In re Jordan*, 7 Cal.3d
19  930 (1972).[19]

20  *See*, RFJN PP. 150-152

21      The Privilege Holders again argued that California law on privilege should apply in their
22  Closing Brief.  This time, not only did the Privilege Holders again discuss California Evidence
23  Code 952 and 951, but also refuted the applicability of two cases the Bankruptcy Court ultimately
24  relied on in the Order, arguing:

25

26   

27  [19]  The Pre-Hearing Brief also provided a detailed analysis of *Atmel Corp v. St. Paul Fire & Marine Ins. Co.*, 409 F.
    Supp 2d 1180 (N.D.Cal. 2005) in which a federal court held that California Evidence Code § 952 extended the
    attorney client privilege to third party agents or brokers of the client. RFJN P.152.
28

In *Leone*, the court readily admits that the "authority cited herein is not federal and, thus not binding." *Leone* at * 15. The Court then goes on to rely on <u>Connecticut state</u> law to render its decision. Since *Leone* neither applies federal nor California law, it is simply not applicable to this case. It should also be noted that Connecticut law adds a component to the client-representative inquiry that California does not. Connecticut mandates that a client-representative's presence be necessary in order for communications to be privileged (*i.e.* because of some incapacity the client is physically unable to communicate with the attorney) *Id.* California has no such requirement. As is set forth below, in California a client may elect to communicate to her attorney through an agent whether or not she is capable of communicating to the attorney herself. *See, City and County of San Francisco v. The Superior Court of the City and County of San Francisco,* 37 Cal.2d 227, 236 (1951).

Similarly, *In re Grand Jury Subpoena* applies <u>New York law</u> and is equally inapplicable to this case. Moreover, the facts of that case have no application here. The Court addressed claims of union members that statements by them <u>to their union representatives (not to their lawyers)</u> should be privileged. The court declined to find such statements were privileged because to do so, it would have to create a new privilege (union member-union representative) which the Court did not find was warranted. *In re Grand Jury Subpoenas,* 995 F.Supp. at 334. Not so here. Sabella is not asking this Court to create a new privilege. She is simply requesting this Court apply the existing attorney-client privilege as is warranted by the facts of this case.

*See,* RFJN PP. 169-170.

Thus, as set forth in the Privilege Holders' Closing Brief, the aspect of these cases the Order finds compelling (communication between the agent and the attorney was necessitated by the client's inability to speak with counsel) is grounded in the state privilege laws of the states of Connecticut and New York, but this law is directly contrary not only with California Evidence Code Sections 952 and 951 but also with the California Supreme Court's holding in *City and County of San Francisco v. Sup. Crt.,* 37 Cal. 2d 227, 236 (1951) which held:

> It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client or both. The client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could thus be delegated. A communication, then by *any form of agency* employed or set in motion by the client is within the privilege.

*City and County of San Francisco* at 236-237 [Emphasis in original].

When California law is applied to this case, the outcome of this case is radically different because it would protect from disclosure the communications between Lei/Alcon and the attorneys

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

pursuant to the attorney client privilege. As argued in both the Privilege Holders' Pre Hearing and Closing Briefs and proven at the hearing, Lei was included in communications between Dynamic/Sabella and the attorneys because he was present to further the interest of the client (be it Dynamic or Sabella). Further, Lei communicated with the attorneys on behalf of Dynamic and/or Sabella because the disclosure of legal advice to him was reasonably necessary for the transmission of the information back to the client and the accomplishment for which the lawyer was consulted, namely to "get the deal done" between Dynamic and North Plaza.

2.    The Bankruptcy Court Erred in Not Applying California Privilege Law Pursuant to Federal Rule of Evidence 501.

The Bankruptcy Court erred by assuming federal common law determines the scope of the attorney client privilege in this situation.  A proper analysis of the procedural posture of the issue and Federal Rule of Evidence ("FRE") 501 compels the conclusion that California state law does control the scope of the attorney client privilege in this situation, ***not*** federal common law.

It is crucial to be clear that the primary issue underlying this discovery dispute is the Trustee's intention to attack the legal substance and amount of Dynamic's and Sabella's secured claims against the bankruptcy estate, which the Trustee readily admits.  In his Motion to Compel, the Trustee points to the following ***state law issues*** as reasons why he needs the disputed discovery from Lei/Alcon:

- There are concerns over the proposed settlement of the Sabella/Dynamic claims in light of, *inter alia,* issues of usury law and holder in due course. RFJN P. 58: 8-11;

- Lei's role as an employee of Dynamic/Sabella or as an "independent broker" who "arranged" the Dynamic/Sabella loans is extraordinarily relevant to this case: According to the Trustee's preliminary calculations determination that Lei did not "arrange" the loan for another as an independent "broker" would decrease the value of the Dynamic Claim No. 16 alone by a minimum of $8 million. RFJN P. 64: 22-25;[20]

- The proposed settlement…elicited extensive debate concerning, *inter alia,*  the propriety of the settlement amount of Dynamic Claims 14

---

[20] This, of course, is referring to the usury provisions of the California Constitution.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

and 16 in light of issues related to usury law and whether Sabella/Dynamic was each a holder in due course. RFJN PP. 64: 27-28 and 65:1-2;

- The issue of Lei's business and/or employment relationship with Dynamic/Sabella is also most relevant to the determination of the usury safe harbor as it affects the Dynamic/Sabella claims against the estate. RFJN P. 72: 11-13;

- The Trustee also respectfully suggests that, in light of Lei's present attempt to claim the benefit of the attorney-client privilege on the basis of his claimed status as a de facto employee of Dynamic/Sabella, Lei should be estopped from making future assertions in this case that he otherwise could have functioned at any point in time as an "independent broker". RFJN P.77: 3-6. This passage then refers to footnote 12 which states, "Under governing law, a functional employee of Dynamic and/or Sabella could not possibly have "arranged" loans for Dynamic and/or Sabella while under their directions and control. *See Park Terrace LTD v. Teasdale*, 100 Cal. App. 4th 802 (2002) (usury exemption is inapplicable where broker acts on own behalf)."

In the Order, the Bankruptcy Court appropriately began its analysis of the law controlling this discovery issue with FRCP 26(b) (1), which allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense…." *See*, RFJN P 209.[21]  However, the Court erred by skipping the next step which should have been to apply the Federal Rules of Evidence to determine which law controls the scope of the attorney client privilege in this situation.

The Federal Rules of Evidence apply to proceedings in  Bankruptcy Courts.  FRE 101; FRBP 9017.  FRE 501 is the only Federal Rule of Evidence concerning privilege and it states:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.  However, in civil actions and proceedings, with respect to an *element of a claim or defense as to which State law supplies the rule of decision*, the privilege of a witness, person, government, State, or political subdivision thereof *shall be* determined in accordance with *State law*.  FRE 501 (emphasis added).

---

[21] FRCP 26(b)(1) is incorporated into FRBP 7026 verbatim.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Bankruptcy proceedings, especially contested matters and adversary proceedings, are

2    unquestionably "a civil action or proceeding," so the second sentence of FRE 501 must be

3    analyzed.  The second sentence of FRE 501 is also known as the "State Law Proviso."

4    Pursuant to the State Law Proviso, California state law defining the attorney client

5    privilege must be used if California state law provides the rule of decision in connection with the

6    element of a claim or defense at issue.   The Ninth Circuit has recognized the importance of the

7    State Law Proviso is that state law governs the issue of privilege in federal proceedings relating to

8    state law claims.  *Star Editorial, Inc. v. U.S. District Court*, 7 F.3d 856, 859 (9th Cir. 1993); *See*

9    *also,  Amco Ins. Co. v. Madera Quality Nut LLC*, 2006 U.S. Dist. LEXIS 21205, *12 (E.D.Cal.

10   2006) (state law claims compel use of state law on privilege in federal court).[22]

11   As admitted by the Trustee, the issue underlying the discovery dispute certainly is a "claim

12   or defense as to which state law [here California] supplies the rule of decision."  However, the

13   Trustee argued the "claim or defense" at issue is the scope of examination under FRBP 2004. This

14   argument is erroneous  because this circular logic would never allow any state privilege law in any

15   federal court because all federal discovery is carried out pursuant to federal procedural rules of

16   some sort.[23]  Moreover, this circular approach has been consistently rejected by the courts.

17   The Eleventh Circuit case of *In re Int'l Horizons*, 689 F.2d 996, 1003 (1982 11th Cir)

18   discussed whether to apply federal common law or the forum state's law to determine whether

19   documents requested in a FRBP 2004 examination were protected by privilege.  Although the case

20   is sometimes misread, in its analysis of the FRE 501 State Law Proviso, the Eleventh Circuit first

---

21   [22] The House Judiciary Committee explanation in the House Report explains that the State Law

22   Proviso in the enacted version of FRE 501 "is designed to ***require the application of State***

23   ***privilege law*** in civil actions and proceedings … the rationale underlying the proviso is that

     ***federal law should not supersede that of the States*** in substantive areas such as privilege absent a

24   compelling reason."  Wright & Graham, *Federal Practice and Procedure*: Evidence Section 5421

     fn.53 pp.656-657 (emphasis added).

25

26   [23] There is one bankruptcy court decision which made the same error, although it was harmless

     there because the scope of the attorney client privilege in that case was the same in state and

27   federal law.  See, *In re Bautista*, 2007 Bankr. LEXIS 4170, *3-4 (Bankr. N.D.Cal. 2007).

     Furthermore, the cases cited by the court in Bautista do ***not***, in fact, support the court's conclusion.

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR STAY PENDING APPEAL

1   looked to the source of the underlying "claim or defense" at issue when the discovery was issued

2   (in that case, the discovery was propounded at the very outset of the bankruptcy case).  The

3   Eleventh Circuit applied federal law only because "the bankruptcy proceeding did not yet involve

4   state claims." *Id*. (emphasis added)  The obvious corollary to the Eleventh Circuit's ruling is that

5   the forum state's laws on privilege do apply when asserted state claims underlie a bankruptcy

6   discovery dispute.

7           In this case, which originated in 2004, objections to Dynamic's and Sabella's secured

8   claims were filed back in September 2005 and have been the main issue ever since then.  As stated

9   above, the Trustee intends to invoke California state law on usury and holder in due course to

10  attack the legal substance and amount of Dynamic's secured claims and Sabella's secured claims.

11  Thus, there is no question that the "element of a claim or defense" underlying the Trustee's

12  discovery are Dynamic's and Sabella's secured claims against the estate, which must be decided

13  under California law.

14          Further, when the bankruptcy court determines the ***amount*** of a contested claim, it must do

15  so using "otherwise applicable state or federal law."  Collier on Bankruptcy 4:502.03[1] [a] p.502-

16  20 (15th Ed Rev) citing, *In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992) (existence of claim is

17  question of state law); see also, *U.S. v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513-1514 (11th

18  Cir. 1992) (existence and amount of claim must be determined by applicable nonbankruptcy law).

19          When this Court reversed an order of the Bankruptcy Court compelling disclosure of

20  documents in a bankruptcy discovery dispute concerning claims under California insurance law,

21  this Court analyzed FRE 501 and found that the privileged matter was evidence of a California law

22  claim and was in the line of proof that culminated in an element of a state claim or defense, so

23  California privilege law applied.  *Taxel v. Equity Gen'l Ins. Co. (In re Couch)*, 80 B.R. 512, 515

24  (S.D.Cal. 1987).

25          Finally, the Ninth Circuit specifically cited the second sentence in FRE 501 as justification

26  for its reliance upon California law to determine the scope of the attorney client privilege asserted

27  in bankruptcy litigation of a California employment agreement.  *Hamilton v. Lumsden (In re*

28  *Geothermal Resources)*, 93 F3d 648, 653 n.4 (9th Cir. 1996).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    In this case, the amount and existence of Dynamic/Sabella's secured claims concern

2  California parties and California property and arise under written loan agreements made in

3  California.  The Trustee is hoping to avail himself of California law concerning holder in due

4  course and California law on usury interest limits.  Accordingly, the appropriate substantive law

5  applicable to determination of the amount of Dynamic/Sabella' claims is California law.

6  Therefore, pursuant to FRE 501, California law on privilege must be applied.

7  3.    Even If Federal Common Law Applies, Principles of Comity, Federalism and States'
        Rights Compel the Court to Fill the Gaps On this Narrow Issue with Existing California
8        Law on Privilege, Not the Law of Other States

9    Black's Law Dictionary defines judicial comity as "[t]he respect a court of one

10  state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and

11  judicial decisions."[24]  The rule of comity is an enduring and essential component of the United

12  States' system of government.  *See, Darr v. Burford*, 339 U.S. 200, 204 (1950) (describing need

13  for comity between federal and state courts). While the doctrine of comity is one of policy and not

14  an absolute rule, the Supreme Court has spoken of the doctrine with the highest regard, noting:

15          The forbearance which courts of co-ordinate jurisdiction,
            administered under a single system, exercise towards each other,
16          whereby conflicts are avoided, by avoiding interference with the
            process of each other, is a principle of comity, with perhaps no higher
17          sanction than the utility which comes from concord; but between
            State courts and those of the United States, it is something more. It is
18          a principle of right and of law, and therefore, of necessity.

19  *Covell v. Heyman*, 111 U.S. 176, 182 (1884).

20    Further, as a matter of comity, federal courts should attempt to ascertain what interests

21  inspire relevant state doctrine and should take into account the view of state authorities about the

22  importance of those interests.  *See, Leon v. County of San Diego*, 202 F.R.D. 631, 636 (S.D.Cal.

23  2001).  As stated above, the interest the California Supreme Court sought to protect in *City and*

24

25  [24]  BLACK'S LAW DICTIONARY 262 (7th ed. 1999); *See also, Younger v. Harris*, 401 U.S. 37, 44 (1971)(defining
26  comity). In Younger, the Supreme Court defined comity as: [A] proper respect for state court functions, a recognition
    of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief
27  that that the National Government will fare best if the States and their institutions are left free to perform their
    separate functions in their separate ways. Id.

28

*County of San Francisco* was to make sure that the privilege of confidence was not "a vain one" and thus extended the attorney client privilege to cover ***any*** agent the client authorized to speak to her legal counsel for any legal advice related purpose.

Also, in line with the doctrine of comity are the federal cases which hold that on the question of privileged communication, the federal courts follow the law of the state of the forum. *See*, *Baird v. Koerner*, 279 F. 2d 623, 628 (9th Cir. 1960) (because the attorney is created by state law, and differs from state to state, so the nature and extent of the privilege that exist between attorney and client varies); and *Garrison v. General Motors*, 213 F. Supp 515, 517 (S.D.Cal. 1963). As part of its reasoning for applying the law of the forum in which it was situated-California, the *Garrison* Court said:

> In summation we find that because the relationship of client and attorney is created and controlled by the law of the various states; and that such creation and control is recognized, followed and approved by the federal courts, the nature and extent of the privilege created between a lawyer and his client by the attorney-client relationship requires the federal court to follow the state law…

*Id.*

In this case, Dynamic and Sabella delegated the duty of speaking with their legal counsel to Lei. Under California law, not only is the type of delegation sanctioned, but it is also afforded the same privilege as if Dynamic or Sabella had consulted with the attorneys themselves. It is inequitable to now analyze this "client representative" relationship pursuant to the laws of Connecticut, New York, Michigan, and/or Florida which deny the extension of the attorney client privilege unless Sabella was somehow incapacitated or unable to do so herself. The attorney client relationship at issue in this case was created in California, concerning California loans, secured by California real property, brokered by California real estate brokers for California entities and California residents; therefore, California privilege rules governing this relationship should apply.

From the beginning of this discovery dispute, Dynamic/Sabella have insisted that California law controls the scope of the attorney client privilege in this situation. Dynamic/Sabella did agree with Trustee that, in the alternative, if and only if federal common law applies, then the cases of *Memry Corp. v. Ky. Oil Tech.*, Nv., 2007 U.S. Dist. LEXIS 3094 (N.D.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Cal. 2007), adopting the Eighth Circuit decision of *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir.

2    1994), are germane.  Unfortunately, the Bankruptcy Court incorrectly assumed, with no analysis

3    of FRE 501 whatsoever, that federal common law controlled the scope of the attorney client

4    privilege in this situation.  Furthermore, when the Bankruptcy Court found gaps in existing federal

5    common law on this narrow issue, the Bankruptcy Court looked to case law from Connecticut,

6    Michigan, New York, and Florida to fill the interstices, but should have looked to the well-

7    developed law in California instead.  Correcting these reversible errors of law by applying

8    California law compels a conclusion that the information is privileged.  Accordingly, there is a

9    likelihood that Dynamic and Sabella will succeed on the merits of their appeal.

10   **C.**    **The Relative Hardships to the Parties Favors a Stay Pending Appeal.**

11            Without a stay, Dynamic/Sabella will be irreparably harmed because they will be deprived

12   of meaningful appellate review and because the Court will be unable to undo the effect of the

13   improper disclosure if their appeal is granted.  *See, e.g.*, *In re Napster*, 479 F. 3. 1078, 1088 (9th

14   Cir. 2007) (harm inescapably irreparable) quoting *U.S. v. Griffin*, 440 F.3d 1138, 1142 (9th Cir.

15   2006) (finding that defendant has shown a "real possibility" the he would be irreparably harmed

16   by the disclosure of privilege letters pursuant to the district court's order), S*ee also In re Lott*, 139

17   Fed.Appx. 658, 662 (6th Cir. 2005) (appropriate to stay order compelling discovery of material

18   asserted to be protected by attorney client privilege because "forced disclosure of privileged

19   material may bring about irreparable harm," quoting *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.

20   1997)).

21            Issuance of a stay is appropriate because "an appeal after disclosure of the privileged

22   communication is an inadequate remedy." *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486,

23   1491 (9th Cir. 1989) (internal citations omitted); *See also Bittaker v. Woodford*, 331 F.3d 715,

24   717-18 (9th Cir. 2003) ("review after final judgment may . . . come too late"); *In re Ford Motor

25   Co.*, 110 F.3d 954, 963 (3d Cir. 1997) ("[A]ppeal after final judgment cannot remedy the breach in

26   confidentiality occasioned by the erroneous disclosure of protected materials . . . because there is

27   no way to unscramble the egg scrambled by the disclosure.").

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    The irreparable harm that arises from the erroneous disclosure of privileged materials is so

2    self-evident that one need not even assert "any specific irreparable injury that would occur" absent

3    a stay pending the appeal.  *U.S. v. Philip Morris Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003)

4    (granting motion for stay pending appeal and finding that "the general injury caused by the breach

5    of the attorney client privilege and the harm resulting from the disclosure of privileged documents

6    to an adverse party is clear enough").

7    Absent a stay, even if Dynamic/Sabella's appeal is successful, the Court will be unable to

8    undo the effects of a disclosure of the privileged documents. The Ninth Circuit has found that the

9    harm flowing from an erroneous ruling requiring the production of otherwise privileged material

10    cannot be undone because "once 'the cat is already out of the bag,' it may not be possible to get it

11    back in . . . . [I]t might be impossible to undo the effects of the disclosure with regard to the

12    information in the plaintiffs' hands and its effect on their trial strategy." *Agster v. Maricopa*

13    *County*, 422 F.3d 836, 838-39 (9th Cir. 2005) (quoting *Bittaker*, 331 F.3d at 718).

14    In sharp contrast, the Trustee and estate will suffer no cognizable harm if the stay is

15    granted.  The Debtor is no longer operating, the estate consists of cash sitting in a bank account,

16    and Dynamic/Sabella are, by far, the largest creditors of the estate (even if their claims are reduced

17    as the Trustee hopes).  The only "harm" the Trustee can muster is delay.  Certainly, the Trustee is

18    anxious to collect his fee by distributing the estate, but that hardly warrants trampling significant

19    rights of the estate's largest creditors.

20    The Trustee may argue that he is unable to proceed with other aspects of this case unless or

21    until he has completed his discovery from Lei/Alcon.  That is unlikely and a stay does not prevent

22    the Trustee from pursuing other discovery or taking any actions outside the very narrow area of

23    information sought to be protected by the attorney client privilege.  Further, in *Upjohn Co. V.*

24    *United States*, 449 U.S. 383, 389 (1981) the United States Supreme Court stated that:

25    > The attorney client privilege is the oldest of the privileges for confidential
> communications known to the common law. Its purpose is to encourage
26    > full and frank communication between attorneys and their clients and
> thereby promote broader public interests in the observance of law and
27    > administration of justice. (internal citations omitted).

28

---

528975.3                                    19                              08-CV-01194-W-CAB

1    There is no wasting asset or ongoing operation with which to be concerned here, so the

2  Trustee and estate scarcely can muster any appreciable harm from a stay pending the outcome of

3  the appeal.  Sometimes good jurisprudence takes time and this issue is certainly worthy of careful

4  attention.

5    In balancing the fundamental purpose of the attorney client privilege against the

6  Trustee's concerns to expedite this case, the scales tip heavily in the favor of Dynamic/Sabella and

7  preserving their confidential communications with their legal counsel. Since the harm to

8  Dynamic/Sabella if a stay is not granted far outweighs (and is incurable) compared to any

9  negligible harm the Trustee may experience if a stay is granted, the Court should stay enforcement

10  of the Order until the appeal is decided.

11  **D.    Staying the Order Serves the Public's Interest.**

12    While there is no direct impact on the public as this case is a private matter, there are

13  tangential public policy concerns underlining the Order that would best be served if the stay is

14  granted. The attorney client privilege is the oldest common law privilege and protects liberty

15  interests fundamental to American jurisprudence by allowing free discourse among clients and

16  their attorneys.  *In re Napster*, 479 F.3d 1078, 1090, citing *U.S. v. Chen*, 99 F.3d 1495, 1499 (9th

17  Cir. 1996).  The State of California has codified the privilege in detail to assure its availability to

18  all residents of this state.  Therefore, the public of the State of California has an interest in being

19  assured that this privilege is not lightly cast aside by federal courts.  Providing due process that is

20  meaningful is also of great interest to the public.  Both of those interests are implicated by the

21  Court's decision here.

22    Staying enforcement of the Order pending appeal provides real due process, not just lip

23  service, and reassures the people of California that the judiciary carefully considers, in a real way,

24  and decides the complex issue involving States' rights, federalism, and comity before the federal

25  court compels California residents to disclose information asserted to be protected by the attorney

26  client privilege.

27    Furthermore, considering the holding from *Upjohn* quoted above, Dynamic/Sabella, in

28  seeking to preserve their attorney client privilege, may actually be promoting "a broader public

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   interest" on the issue of "client-representative" in this judicial district. All in all, the public interest

2   would be well served by staying the order pending appeal.

### IV.

### CONCLUSION

5       Based upon the foregoing, the Dynamic/Sabella pray this Court enter an order staying the

6   Order entered June 2, 2008 Granting the Trustee's Motion to Compel Discovery from Isaac

7   Lei/The Alcon Group pending exhaustion of Movants' rights on appeal and granting such other

8   relief as the Court deems just and proper.

9   DATED: July 11, 2008                    Respectfully submitted,

10                                          FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                            MICHAEL GERARD FLETCHER
11                                          TRICIA L. LEGITTINO

12

13

                                            By:  /s/ Michael Gerard Fletcher
14                                               MICHAEL GERARD FLETCHER
                                                 Attorneys for Movants/Appellants
15                                               Dynamic Finance Corporation and
                                                 Angela C. Sabella
16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000