Michael Gerard Fletcher (State Bar No. 070849)
  mfletcher@frandzel.com
Tricia L. Legittino (State Bar No. 254311)
  tlegettino@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Movants/Appellants
Dynamic Finance Corporation and Angela C. Sabella

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NORTH PLAZA, LLC,<br><br>    Debtor. | District Case No. 08-CV-01194-W-CAB<br><br>Bankruptcy Court No. 04-00769-PB11<br><br>Appeal No. 2 |
| ANGELA C. SABELLA AND DYNAMIC FINANCE CORPORATION,<br><br>    Appellants,<br>v.<br><br>CHAPTER 11 TRUSTEE RICHARD KIPPERMAN,<br><br>    Appellee. | **REPLY TO TRUSTEE'S OPPOSITION TO ANGELA SABELLA'S AND DYNAMIC FINANCE CORPORATION'S MOTION FOR STAY PENDING APPEAL**<br><br>DATE:      N/A<br>TIME:       N/A<br>COURTROOM: Seven<br><br>The Honorable Thomas J. Whelan, Judge Presiding |

530408.1

08-CV-01194-W-CAB

REPLY TO TRUSTEE'S OPPOSITION

# **PREFACE**

"I do agree, in the abstract, that the context of this case, you know, as long as it's taken up to this point in time, is not going to impose irreparable harm to the Trustee to have to await the results of an appeal."

> Transcript of hearing in the Southern District Bankruptcy Court regarding Dynamic's and Sabella's Motion for Stay Pending Appeal, RFJN, P. 308.

"Once privileged materials are ordered disclosed, the practical effect of the order is often irreparable by a subsequent appeal ... once the cat is already out of the bag, it may not be possible to get it back in."

> *In Re Napster*, 479 F.3d 1078, 1088 (9th Cir. 2007)

# I

## INTRODUCTION

The Trustee chose to fill his Opposition with irrelevant legal analysis and literary quotes all in an effort to avoid the core issue in this case - the error the Bankruptcy Court committed when it applied privilege laws from other states which are exactly the opposite of California's well-established body of privilege law. Had the Bankruptcy Court followed the principles of comity and applied California privilege law, the communications between Lei and the Privilege Holders' attorneys would be afforded the protections of the attorney client privilege and this case would have come to a dramatically different result.

Remarkably, the Trustee's Opposition does not even address or analyze the legal arguments of comity, federalism, and state's rights laid out in the Privilege Holders' Memorandum of Points and Authorities ("Memorandum"). Rather, the Trustee focuses the majority of his Opposition arguing that the federal common law of privilege should apply in this case because the subpoenas at issue were served pursuant to a 2004 examination. Not only is this argument legally wrong, but it is wholly irrelevant *since the Bankruptcy Court did not decide this case on federal common law, but rather on the laws from New York, Connecticut, Florida, and Michigan*, all of which are contrary to California law.

The Trustee's Opposition also shies away from another difficult argument he cannot refute, the irreparable harm Appellants Dynamic and Sabella will incur if the confidential communications between Lei and their lawyers is disclosed while their appeal of the Order is pending. It is understandable why the Trustee conveniently sidestepped this issue in his Opposition. The fact of the matter is that not only will Dynamic and Sabella be irreparably harmed by the disclosure of the confidential information pending appeal, but the existence and severity of this harm has been well recognized by the Ninth Circuit in the *Napster* opinion.

Thus, based on the arguments set forth in the Memorandum, this Reply and the Trustee's failure to adequately address the legal issues in this case, the Privilege Holders' Motion for Stay Pending Appeal should be granted.

# II

# ARGUMENT

A. **Standard of Review.**

The Trustee primarily relies on the decisions of *In re Wymer*, 5 B.R. 802 (B.A.P 9th Cir. 1980) and *In re Ohanian* 338 B.R. 839 (E.D. Cal. 2006) to support his argument that an abuse of discretion standard should be applied when a District Court is *reviewing* a Bankruptcy Court's denial of a Motion for Stay pursuant to FRBP 8005. However, the law on the proper standard is not as cut and dry as the Trustee portrays it to be. In fact, in *In re Ohanian*, the Court noted that the abuse of discretion standard is not universally applied. *Id.* at 847.

A plain reading of FRBP 8005 reveals that the District Court is not *reviewing* the Bankruptcy Court's decision as an appellate tribunal. Rather, Movants are directed by FRBP 8005 to bring a *motion* to the District Court requesting a stay pending the appeal. Thus, a new motion is made to the District Court which should be reviewed like every other motion presented to the Court, *de novo* on both issues of fact and law. This is precisely what was contemplated by FRBP 8005 which states, "… A *motion* for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel…" (Emphasis added). If the legislative intent was for the District Court's (or BAP's) role to be limited to purely a reviewing one, FRBP 8005 would have specifically called for appellate review and not a motion to be made before these tribunals.

Further, a BAP concurring opinion that came eighteen years after *In re Wymer*,[1] states:

> Rule 8005 provides that a motion for a stay of an order pending appeal must be presented to a bankruptcy judge. If denied, it must then be made to a district court or a bankruptcy appellate panel with an explanation of why the relief was not obtained from the bankruptcy judge.
>
> Thus, the proper procedure after a denial of a stay pending appeal by a bankruptcy court is *not* to appeal the denial, but rather to

---

[1] It is also important to note that *In re Wymer* was decided before the current version FRBP 8005 was put into effect.

> request a stay directly from the BAP. Therefore, no appeal may lie form the bankruptcy court's denial of a stay...(Emphasis in original).

*In re Ernst Home Center*, 221 B.R. 243, 248 (B.A.P. 9th Cir. 1998). Moreover, in this case, the Bankruptcy Court itself contemplated that Dynamic and Sabella would be making a new motion for stay rather than appealing its ruling to this District Court when it said, "Now, that ruling, of course, is without prejudice to your making a similar application to the District Court." RFJN, P. 308-309.

Thus, the proper standard of review of Dynamic/Sabella's Motion for Stay Pending Appeal is *de novo* and not whether there has been an abuse of discretion. However, even if an abuse of discretion standard is applied, the Motion should still be granted. First, it was clearly erroneous for the Bankruptcy Court to find that the Privilege Holders would not be irreparably injured if the stay was not granted since *In re Napster* specifically holds that the disclosure of information claimed to be privileged pending appeal creates an irreparable injury to the privilege holder. *See, In re Napster,* 479 F. 3d 1078, 1088 (9th Cir. 2007). Second, while the Bankruptcy Court did not provide any specifics as to why it believed that Dynamic and Sabella were not likely to succeed on the merits of their appeal, it noted that:

> This case has been an interesting case and I've wrestled with this particular motion for a couple of reasons. One is because, philosophically, it's always an intriguing question when you have a test that requires a deciding judge to decide whether there's, you know, whatever standard you choose to call it; a probability or likelihood that I am wrong.

RFJN, P. 306. This reasoning of the Bankruptcy Court falls in with the line of cases in which several courts have recognized that under a literal application of the "likelihood of success on appeal" factor, "a stay would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination of the merits." *Kouba v. Allstate Ins. Co.*, No. S-77-99 (LKK), 1981 WL 278, at *3 (E.D. Cal. Nov. 12, 1981) (internal citations omitted). Therefore, to rest the outcome of the Privilege Holders' Motion on a questionable legal procedure that puts not only the litigants but the trial court itself in an untenable position is certainly not equitable.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

B. **A 'Sliding Scale' Analysis is Appropriate for a Discretionary Stay Pursuant to FRBP 8005.**

The Trustee blows hot and cold in the Opposition on the standard to be applied to the four factors for a discretionary stay as set forth in *Hilton v. Braunskill*, 481 U.S. 770 (1987). First, the Trustee asserts that a stay pursuant to FRBP 8005 is analogous to a preliminary injunction under FRCP 62 (c), therefore the *Hilton* factors are applicable. Opposition P. 7:15-23 and 8:1-4. However, the Trustee then tries to distance himself from the traditional 'sliding scale' analysis that is applied to the four factors. In order to sever the ties between FRBP 8005 and the application of the 'sliding scale', the Trustee primarily relies on a Washington District Court case and a convoluted rational that he attributes to a non-bankruptcy case from the 6th Circuit.

However, the 'sliding scale' is a necessary and well-founded component of the four part discretionary stay test. This equitable balance was first recognized by the United States Supreme Court itself in *Hilton* when it stated, "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules" *Hilton* at 777. Further, this <u>balancing of the four factors</u> has been adopted by the Ninth Circuit in *Alaska v. Native Village of Venetie*, 856 F. 2d 1384, 1389 (9th Cir. 1988), "If the balance of harm tips toward the [movant], then the [movant] need not show as robust a likelihood of success on the merits". And, perhaps more importantly in this particular case, the sliding scale analysis has been applied by Bankruptcy Courts in the State of California, such as in *Lynch v. Ca. Pub. Util. Comm'* 2005 U.S. Dist LEXIS 6022 at *7(N.D. Cal. 2004), "[T]he relative hardship of the parties is a critical element in determining whether a stay is warranted." Thus, there is no justifiable reason to refuse to apply the 'sliding scale' to a motion for stay pending appeal pursuant to FRBP 8005.

C. **Pursuant to FRE 501 California Privilege Law Should have been Applied in this Case.**

On page 11 of the Opposition, the Trustee accurately recites Judge Russell's *Bankruptcy Evidence Manual* section regarding federal common law rules of privilege applying to 2004 examinations. However, this is the rule when federal law is providing the rule of decision. To this point, the Trustee has not cited a single case controlling in this district in which the underlying

claims or defenses for which the discovery is being sought (be it by a 2004 examination or normal discovery procedures) is based solely on state claims-such as the situation here.

However, in their Memorandum, the Privilege Holders have provided the Court with two controlling cases which when confronted with a discovery dispute in a bankruptcy setting looked past the federal procedures being employed to obtain the discovery and applied the privilege laws of the forum state - California. Specifically, in *In Re Geothermal*, the Ninth Circuit after a FRE 501 analysis concluded that since the underlying dispute would be determined by California contract law, it would apply California law on privileges to the discovery objections. *Geothermal*, 93 F3d 648, 653 n.4 (9th Cir. 1996).

Similarly, in *In re Couch*, this Court reversed an order of the Bankruptcy Court compelling disclosure of documents. *Couch* 80 B.R. 512 (S.D.Cal. 1987). Because the claims and defense of the controversy in *Couch* were based on California insurance and contract law the Honorable Judge Enright in his FRE 501 analysis, citing to Wright and Graham, applied California state privilege law specifically stating:

> "Rule 501 presents difficult problems in bankruptcy because while such proceedings are undoubtedly federal in nature, the bankruptcy court may be required to undertake to determine the validity of state claims." They [Wright and Graham] contend that if a privilege matter is evidence of state claim, and "is in a line of proof that culminated in an element of a state claim or defense, then state rules of privilege apply."

*Couch* at 515.

As discussed at length in the Memorandum, the *only* claims that are left for the Trustee to pursue in this case are California state law claims. Thus the discovery he is seeking (regardless of the tool he uses to obtain it) is to establish claims and/or defenses founded on California law. Therefore California privilege law should have been applied to Dynamic/Sabella's attorney client privilege objections.

D. **Since The Bankruptcy Court did not Base its Ruling on Federal Law, it Should Have Applied the Privilege Law of California.**

As an initial matter, the Privilege Holders never agreed, as the Trustee alleges, that *only* the federal common law on privileges would apply to the issue of whether Lei's communications with

1 | Dynamic's and/or Sabella's attorneys were protected from disclosure by the attorney client
2 | privilege. The Privilege Holders have always argued that California privilege law should apply to
3 | his case. However, as an alternative, they have also argued that in the Ninth Circuit case *Memry*
4 | *Corp. v. Ky. Oil Tech. NV.*, 2007 U.S. Dist. LEXIS 3094 (N. D. Cal. 2007), adopting the Eight
5 | Circuit case of *In re Bieter Co*, 16 F. 3d 929 (8th Cir. 1994), would be applicable to this case in
6 | determining the issue of client representative. The Privilege Holders' position is borne out in every
7 | brief they filed in opposition to the Trustee's Motion to Compel.[2] Moreover, the Bankruptcy
8 | Court even acknowledged this limitation to the Privilege Holders' position in its Order wherein it
9 | stated:

> The parties to this dispute agree that, as to the law within the Ninth Circuit, the case of *Memry v. Ky. Oil* and *In re Bieter* [citations omitted] best sets forth the inclusion of "client representative" within the attorney-client privilege, at least where the client is a corporation.[3]

RFJN, P. 211.

However, this dispute is actually a non-issue. The Bankruptcy Court essentially threw out *Bieter* and *Memry* when it concluded that "the applicable authority is those cases considering the application of the 'client representative' extension of the attorney-client privilege to individuals." RFJN, P. 213. Since the Bankruptcy Court has already concluded that *Bieter* and *Memry* applied only to the context in which "the client is a corporation" it was left with a void of federal common law on privilege to apply to this case.

This is one of the major areas where the Bankruptcy Court erred. Based on the doctrine of comity, when the Bankruptcy Court concluded that it no longer had federal common law to look to, it should have applied the privilege law of the forum state-here California. Yet, for some unexplained reason, the Bankruptcy Court decided to ignore the well-established privilege law in

---

[2] The excerpts of their briefs in which they argue California law should apply to this case are set forth on pages 9-12 of the Privilege Holder's Memorandum.

[3] The Privilege Holders dispute the Bankruptcy Court's holding that *Bieter* and *Memry* apply only "where the client is a corporation" and reserve the right to make this argument in the appeal of the Bankruptcy Court's Order.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

California (which the Privilege Holders had extensively briefed for the Court in both their pre and post hearing briefs) altogether and instead applied the privilege law of New York, Connecticut, Michigan, and Florida - laws which are 180 degrees different that the laws of California.

What makes this by-pass of California law even more troublesome is that the federal cases on which the Bankruptcy Court relied for its ruling, applied, or at least even considered, the law of the forum states in which they sat because they found a void in the federal common law.[4] For example, *Henrick v. Avis*, 944 F. Supp 187, 188 (W.D.N.Y), after an analysis of FRE 501, applies New York law on privilege to the case.

Further, in *In Re Grand Jury Subpoenas*, 995 F. Supp 332, 333-335 (1998 E.D.N.Y), when confronted with no applicable state or federal cases, the Court based its decision not to create a new privilege between union members and their non-attorney union officials, in part, on the fact that the New York legislature had recently rejected creating such a privilege under state evidence laws. *In re Grand Jury Subpoena* is distinguishable from the case at bar for two important reasons. First, the federal court looked to the state's position on the privilege when making its decision, something the Bankruptcy Court did not do in Dynamic/Sabella's case. Further, unlike the law in New York which had no law to provide guidance to the Court, California has a substantial body of law that began with the California Supreme Court's 1951 holding in City *and County of San Francisco*, 37 Cal. 2d 227 (1951) that protects from disclosure conversations between an individual's authorized "client' representative" and her legal counsel *without any showing of the client's disability or inability to do so herself.*

Finally, it is significant to note that the Trustee's Opposition does not refute any of the Privilege Holders' arguments regarding comity, federalism, or state's rights. In fact, the Trustee's Opposition neither gives an explanation as to why the privilege laws from New York, Connecticut, Florida, and Michigan should apply, nor argues why California law on privilege

---

[4]The state cases cited by the Bankruptcy Court in the Order, *Gerheiser v. Stephens*, 712 So. 2d 1252 (Fla. App. 1998) and *Grubbs v. K Mart Corp*, 411 N.W. 2d 477 (Mich. Ct. App. 1987) clearly apply the privilege law of their respective states.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1 should not apply. Based on the Trustee's complete failure to address these arguments in his
2 Opposition, he has essentially conceded them for purposes of this Motion for Stay.

3 **E.     The Trustee will Not Be Harmed if The Stay is Granted.**

4        In his current Opposition the Trustee makes the same argument that he did before the
5 Bankruptcy Court regarding his proposed "injury" if the stay should issue, namely that he has been
6 "struggling" to get these documents and any further delay is "truly intolerable".[5] However, the
7 Bankruptcy Court summarily dismissed the Trustee's purported "harm" when it said, "I do agree,
8 in the abstract, that the context of this case, you know, as long as it's taken up to this point in time,
9 is not going to impose irreparable harm to the Trustee to have to await the results of an appeal."
10 RFJN P. 308. Further, mere assertion of a delay does not constitute substantial injury. *See, United*
11 *States v. Phillip Morris Inc.,* 314 F. 3d 612, 622 (D.C. Cir. 2003).

12        While the Trustee is unable to muster up any legally cognizable "hardship" that would
13 militate against the application of a stay, Dynamic and Sabella have explained to the Court, in
14 great detail, the irreparable harm they will suffer if the stay is not granted - harm that has been
15 specifically recognized by the Ninth Circuit in *In Re Napster* 479 F. 3d 1078, 1088 (9th Cir. 2007).
16 Specifically, the *Napster* Court stated that once privileged materials are ordered disclosed, the
17 practical effect of the order is often *irreparable* in a subsequent appeal. The Court further refined
18 this idea when it said, in the case of an order involving the disclosure of privileged information,
19 "once the cat is already out of the bag, it may not be possible to get it back in." *Id.* (Emphasis
20 added).

21        Further, as discussed in the Privilege Holders' Memorandum (and not even addressed by
22 the Trustee in his Opposition), there are no exigent circumstances that would necessitate a denial

---

[5] In the Opposition, the Trustee states, in passing, that "other creditors of the bankruptcy estate are being continually harmed by this ongoing discovery battle." Opposition, P. 20: 14-15. However, other than this one sentence the Trustee presents no concrete information as to whom these other creditors are, whether their claims are superior or junior to Dynamic's and Sabella's, or even *how* they are being harmed. When compared to the pages and pages upon which the Trustee opines about his alleged "harm" in having to wait for the documents, this lip service to the "harm" of other creditors cannot be taken seriously.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

of the Motion. There is no operating debtor. The estate has been reduced to cash. The Trustee holds the cash and presumably is collecting interest. There is no wasting asset. If anyone could possibly be harmed by a stay in this case it would be the primary secured creditors -who are Dynamic and Sabella, who are likely to hold the largest unsecured claims even if the Trustee prevails in various threatened and real litigation matters. The Trustee can hardly claim that he has no ability to proceed with other aspects of his case just because attorney client communications are not available to him for the time being. Trustees are generally not in possession of attorney client communications, whether in investigating their cases or engaging in litigation. Relegating this Trustee to that body of information and documents that he would normally never possess while the appeal proceeds creates no hardship for him whatsoever.

### III

### CONCLUSION

For the reasons stated, Dynamic and Sabella respectfully submit that this Court should order a stay pending this Appeal.

DATED: July 21, 2008

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
TRICIA L. LEGITTINO


By: /s/Michael Gerard Fletcher
MICHAEL GERARD FLETCHER
Attorneys for Movants/Appellants
Dynamic Finance Corporation and Angela C. Sabella

# PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of FRANDZEL ROBINS BLOOM & CSATO, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 6500 Wilshire Boulevard, Seventeenth Floor, Los Angeles, California 90048-4920.

On July 21, 2008, I served true copy(ies) of the **REPLY TO TRUSTEE'S OPPOSITION TO ANGELA SABELLA'S AND DYNAMIC FINANCE CORPORATION'S MOTION FOR STAY PENDING APPEAL**, the original(s) of which is(are) affixed hereto, to the party(ies) listed on the attached service list.

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such document(s) were placed in envelopes addressed to the person(s) served hereunder for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐ **BY FACSIMILE:** At approximately _____, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (323) 651-2577. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐ **BY E-MAIL:** At approximately _____, I caused said document(s) to be transmitted by electronic mail. The name(s) and e-mail addresses of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on July 21, 2008, at Los Angeles, California.

/s/Tiffany Lok
TIFFANY LOK

530408.1                                    1                          08-CV-01194-W-CAB
REPLY TO TRUSTEE'S OPPOSITION

## SERVICE LIST

**VIA CM/ECF NOTICE OF ELECTRONIC FILING**

- Ali M.M. Mojdehi    ali.m.m.mojdehi@bakernet.com, janet.d.gertz@bakernet.com;joseph.r.dunn@bakernet.com;sam.h.aghili@bakernet.com;sdefile@bakernet.com

**VIA U.S. MAIL**

Tiffany L. Carroll
Office of the United States Trustee
402 West Broadway, Suite 600
San Diego, CA 92101
tiffany.l.carroll@usdoj.gov

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

530408.1     2     08-CV-01194-W-CAB
REPLY TO TRUSTEE'S OPPOSITION