1
2
3
4
5



6
7

8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11  In re: NORTH PLAZA, LLC,                     CASE NO. 08-CV-1194 W (CAB)
12                              Debtor           BANKRUPTCY NO. 04-00769-PB11
13
14                                               ORDER DENYING APPELLANTS'
     DYNAMIC FINANCE                             MOTION FOR STAY PENDING
15   CORPORATION et al.,                         APPEAL (Doc. No. 3.)
16                              Appellants,
17            vs.
18   CHAPTER 11 TRUSTEE RICHARD
     KIPPERMAN,
19
                                Appellee.
20
          On July 7, 2008 Appellee Richard Kipperman ("Trustee"), Chapter 11
21
     Bankruptcy Trustee of the North Plaza, LLC bankruptcy estate, elected to have
22
     Appellants Dynamic Finance Corporation et al.'s (collectively, "Appellants") appeal
23
     heard by this District Court pursuant to 28 U.S.C. § 158(c)(1)(B).  (Doc. No. 1.)
24
     Appellants appeal United States Bankruptcy Judge Peter W. Bowie's May 30, 2008
25
     Order compelling production of documents that Appellants argue are protected by
26
     attorney-client privilege.
27
          On July 11, 2007, after unsuccessfully petitioning the Bankruptcy Court,
28
     Appellants moved this Court for an order staying Judge Bowie's May 30, 2008 Order

1  until the appeal is exhausted. (Doc. No. 3.) The Court takes the matter under
2  submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the
3  following reasons, the Court **DENIES** Appellants' motion for stay pending appeal.

5  I.    BACKGROUND
6      In July 1998, North Plaza, LLC ("North Plaza") entered into two loan agreements
7  with Appellant Dynamic Finance Corporation ("Dynamic") and Appellant Angela
8  Sabella ("Sabella") (collectively, "Appellants"). (*Appellants' Mot.* 2.) Sabella, the
9  President of Dynamic, purchased a loan junior to Dynamic's. (*Id.*) Because both loans
10 were secured by deeds of trust on North Plaza's real property, real estate broker Isaac
11 Lei ("Lei") and his company, the Alcon Group ("Alcon") were enlisted to help
12 negotiate and arrange the loans. (*Id.*) In order for Lei to adequately accomplish his
13 brokerage duties, Dynamic and Sabella authorized Lei to meet with their respective
14 legal counsel to obtain advice in connection with the North Plaza loans. (*Id.*)
15 Appellants argue that Lei thereby became a "client representative" of Dynamic/Sabella.
16     On January 28, 2004 North Plaza was forced into Chapter 11 bankruptcy, and
17 is the debtor in the underlying bankruptcy action. (Bankr. Doc. No. 1.)[1] Appellants
18 Dynamic and Sabella are the largest secured creditors against the bankruptcy estate.
19 (*Appellants' Mot.* 2.) On June 11, 2006, following the bankruptcy court's denial of a
20 proposed settlement between North Plaza and Appellants,[2] the bankruptcy court
21 appointed Richard M. Kipperman ("Trustee") as Chapter 11 Trustee of the bankruptcy
22 estate. (Bankr. Doc. No. 484.)
23     On September 14, 2006 the Trustee filed an *ex parte* application for a Federal

---

27     [1]The Court **GRANTS** both parties' requests for judicial notice of the bankruptcy court docket, proceedings, and related paperwork.

28     [2]The bankruptcy court noted several serious conflict-of-interest issues when denying the proposed settlement. (*Appellants' Request for Judicial Notice*, Ex. 3.)

1    Rule of Bankruptcy Procedure 2004[3] examination and production of documents of

2    persons with relevant knowledge. (Bankr. Doc. No. 509.)  After much legal wrangling,

3    on February 16, 2007 the Trustee issued a subpoena, authorized under Bankruptcy Rule

4    2004, to Lei and Alcon for documents and testimony.  (*Appellants' Mot.* 3.)  While Lei

5    and Alcon produced some documents, they also served the Trustee with an amended

6    privilege log asserting the attorney-client privilege to documents relating to

7    communications between Lei/Alcon and Dynamic/Sabella's legal counsel.

8        On May 2, 2007 the Trustee moved to compel responses for documents and

9    testimony pursuant to the subpoenas issued to Lei and Alcon. (Bankr. Doc. No. 542.)

10   In opposition, Lei and Sabella provided declarations to the effect that Appellants

11   authorized Lei/Alcon to communicate with their attorneys to secure legal advice during

---

[3]Federal Rule of Bankruptcy Procedure provides, in relevant part:

**Rule 2004.  Examination**

(a) **Examination on motion.** On motion of any party in interest, the court may order the examination of any entity.

(b) **Scope of examination.** The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

(c) **Compelling attendance and production of documents.** The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

(d) **Time and place of examination of debtor.** The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending.

...

1  the course of the loan negotiations, and that the attorney-client privilege insulated

2  these documents from discovery.  (*Appellants' Request for Judicial Notice* Exs. 7–10.)

3  That is, Appellants argued that the law of privilege protected the communications

4  because Lei was serving as a "client representative" of Appellants when he

5  communicated with Appellants' counsel.

6      After briefing, the bankruptcy court was unable to determine whether Lei was

7  a "client representative" of Dynamic or Sabella and ordered an evidentiary hearing.

8  (Bankr. Doc. No. 661.)  Much delay followed, mostly due to Appellants' change of

9  counsel.

10      On January 28, 2008 Appellants filed an adversary proceeding for declaratory

11  judgment against the Trustee. <u>Dynamic Finance Corp. v. Kipperman</u>, No. 08-90035

12  (Bankr. S.D. Cal. complaint filed January 28, 2008).  On March 31, 2008 the Trustee

13  counterclaimed for avoidance of fraudulent conveyance under Chapter 11, United

14  States Code. <u>Dynamic Finance Corp. v. Kipperman</u>, No. 08-90035 (Bankr. S.D. Cal.

15  answer and counterclaims filed March 31, 2008).

16      In March 2008, in the main bankruptcy action, the bankruptcy court finally held

17  a three-day evidentiary hearing to determine whether Lei was a "client representative"

18  of Dynamic or Sabella or both.  Appellants and Trustee extensively briefed the issue

19  both before and after the hearing.  (Bankr. Doc. Nos. 704, 712, 734, 735.)

20      On May 30, 2008, over a year after the Trustee moved to compel, the bankruptcy

21  court entered an Order compelling Lei and Appellants to produce the documents to

22  which they had asserted the attorney-client privilege (the "Order").  (Doc. No. 772.)

23  The Order was primarily based on two findings. First, the relationship between Lei and

24  Dynamic was really an individual relationship between Lei and Sabella, such that Lei

25  could not properly be called a "client representative" of Dynamic Finance Corporation.

26  (*Bankr. Court's Order on Trustee's Mot. to Compel Disc.* 7.)  Second, the Court reviewed

27  the law surrounding the "client representative" extension of the attorney-client

28  privilege and, given the particular circumstances, found no reason to extend the

privilege to cover communications between Lei and Sabella's counsel. (*Id.* 7–9.)

On June 9, 2008 Appellants timely appealed the bankruptcy court's Order. 28 U.S.C. § 158, Fed. R. Bankr. P. 8001(a), 8002(a). The Trustee then elected to have the district court hear the matter. 28 U.S.C. § 158(c).

On June 12, 2008, pursuant to Federal Rule of Bankruptcy Procedure 2005, Appellants moved the bankruptcy court for a stay of the Order pending appeal. (Bankr. Doc. No. 775.) On July 2, 2008 the bankruptcy court declined to stay enforcement of its Order. (Bankr. Doc. No. 796.)

On July 11, 2008 Appellants filed this motion to stay the bankruptcy court's order pending the outcome of the appeal. (Doc. No. 3.) The parties agreed to a shortened briefing schedule and also agreed to informally stay the bankruptcy court's Order until July 25, 2008.

## II.  STANDARD OF REVIEW

A motion for a stay of the judgment, order, or decree of a bankruptcy judge must ordinarily be presented to the bankruptcy judge in the first instance. Fed. R. Bankr. Proc. 8005. A motion for relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. Id.

Where the bankruptcy court has already denied a stay under Federal Rule of Bankruptcy Procedure 8005,[4] the appellate court's review is limited to a simple determination of whether the bankruptcy court abused its discretion. Wymer v. Wymer (In re: Wymer), 5 B.R. 802 (B.A.P. 9th Cir. 1980); Ohanian v. Irwin (In re: Ohanian), 338 B.R. 839, 844 (E.D. Cal. 2006). The abuse of discretion standard on review of the bankruptcy court's order denying a stay encompasses a *de novo* review of the law and

---

[4]Unless otherwise stated, all references to "Rule" shall be to the Federal Rule of Bankruptcy Procedure.

08cv1194W

a clearly erroneous review of the facts with respect to the underlying issues. <u>In re:</u> <u>Ohanian</u>, 228 B.R. at 844, 848.[5]

Initially, it is important to note that nowhere in their moving papers do Appellants argue that the bankruptcy court took an erroneous view of the facts. As discussed more fully below, whether or not this Court should issue a stay is determined almost entirely by a choice of law issue.

## III.  DISCUSSION

### A.    Legal Standard For Issuing a Stay Under Federal Rule of Bankruptcy Procedure 8005

When deciding whether to issue a discretionary stay pending a bankruptcy appeal, courts use the following four factors: (1) Movant's likelihood of success on the merits of the appeal; (2) significant and/or irreparable harm that will come to Movant absent a stay; (3) harm to the adverse party if a stay is granted; and (4) where the public

---

[5]Appellants argue that the Court should be applying a pure *de novo* determination of whether or not a stay is warranted, contending that Rule 8005 allows a district court to issue a stay independently of any determination made by the Bankruptcy Court. (*Appellants' Reply* 2–3.) For support, Appellant cites Rule 8005's text and Judge Russell's concurring opinion in <u>In re: Ernst Home Center</u>, 221 B.R. 243, 248 (B.A.P. 9th Cir. 1998). While these arguments are not unpersuasive, the Court instead follows the reasoning of <u>In re: Ohanian</u>, 228 B.R. at 846, holding that abuse of discretion is the proper standard, because implicit in Rule 8005 is a requirement that the moving party provide a record of the bankruptcy court's actions. Other courts, too, have held that unless an exception applies, failing to move the bankruptcy court for a stay can be fatal to seeking a stay in a district court or appellate counsel. <u>Zahn Farms v.</u> <u>Key Bank (In re: Zahn Farms)</u>, 206 B.R. 643 (B.A.P. 2d Cir. 1997). This suggests that, absent unusual circumstances, a party must always petition the trial court for a stay, whose decision the appellate court will review for abuse of discretion. Considering the text of Rule 8005 as a whole, this Court joins the majority of decisions which approach motions to stay under an abuse of discretion standard, where a motion has been presented in the first instance to the bankruptcy court (as was done here). <u>See In re: Ohanian</u>, 338 B.R. at 245–48 (collecting cases).

At any rate, in this case whether the standard is a *de novo* determination or a review for abuse of discretion hardly matters. Nowhere in their moving papers do Appellants argue a likelihood of success because the bankruptcy court's findings of fact (a) that Sabella and Lei enjoyed a personal relationship, such that Lei was Sabella's individual "client representative," and (b) that Appellants did not establish a "disability" which required Lei to communicate with counsel on Sabella's behalf were erroneous. (*Appellant's Mot.* 4.) Rather, Appellants only argue that the bankruptcy court applied the wrong law to the facts. Even under a review for abuse of discretion, the Court reviews the law *de novo*.

1    interest lies. <u>Hilton v.Braunskill</u>, 481 U.S. 770, 776 (1987); <u>In re: Wymer</u>, 5 B.R. at
2    806.

3        Because these factors were imported from the standard for deciding preliminary
4    injunctions or staying them pending appeal, district courts in this circuit have not
5    agreed on how to apply the discretionary stay factors when deciding whether to stay a
6    final bankruptcy court order pending appeal. <u>Compare Rose Townsend Trust v.</u>
7    <u>Johnston (In re: Johnston)</u>, No. 06-80040, 2007 Bankr. LEXIS 3092 (Bankr. E.D.
8    Wash. Sept. 7, 2007) (requiring movant to show under first factor that he is "likely to
9    succeed" on the merits, rather than merely presenting a "substantial case") <u>and Silicon</u>
10   <u>Valley Bank v. Pon (In re: Pon)</u>, No. C-93-2745, 1994 U.S Dist. LEXIS 2559 at *6
11   (N.D. Cal. Feb. 25, 1994) (holding that the four factors are conjunctive,[6] and movant
12   will not win a stay unless each factor is established by a preponderance of the evidence)
13   <u>with Lynch v. Ca. Pub. Util. Comm'n</u>, No. C-04-0580, 2004 U.S. Dist. LEXIS 6022 at
14   *6 (N.D. Cal. April 9, 2004) (reciting traditional Ninth Circuit "sliding scale" balancing
15   tests used for preliminary injunctions and temporary restraining orders).

16       After reviewing the different standards, the Court finds that <u>Lynch</u>'s "sliding
17   scale" approach ignores the procedural posture of a Rule 8005 stay where the movant
18   is appealing a bankruptcy court's final determination on the merits. A "sliding scale"
19   approach, which often results in disproportionately weighting the "irreparable harm"
20   prong, is appropriate for preliminary injunctions because a court deals with the dispute
21   on first impressions, relies on a less-than-developed factual and legal record, and will
22   ultimately revisit the issue down the road. In contrast, where—as here—a court has
23   taken extensive evidence and briefing and issued a determination on the merits, an
24   interest in finality arises.[7] This finality would be rendered impotent if an enjoined party

25

26       [6] <u>See also</u> <u>In re: Deep</u>, 288 B.R. 27, 30 (N.D.N.Y. 2003) ("Movant's failure to satisfy one
27   prong of the standard for granting a stay pending appeal dooms the motion.").

28       [7] The instant motion to stay is presumably at least the third time Appellants have briefed
     the choice of law issue, after initially contesting the Trustee's motion to compel and
     subsequently moving the bankruptcy court for a stay of the Order pending appeal.

could always raise the spectre of irreparable injury to trump the trial court's order, no matter how unlikely an appellate victory on the merits. Thus, the Court considers <u>In re: Johnston</u> and <u>In re: Pon</u> persuasive and requires that Appellants show that it is more likely than not they will succeed on the merits, whatever the possibility of irreparable injury.

**B.**    <u>**Appellants Have Not Shown That They More Likely Than Not Will Prevail On The Merits**</u>

It is fair to say that the success of Appellants' appeal turns entirely on a question of choice and content of law; that is, whether California privilege law is applied to protect certain communications between Lei and Sabella/Dynamic's counsel. Very simply, Appellants contend that California Evidence Code sections 952 and 951 and California case law privileges Lei's communications with Dynamic/Sabella's counsel because Lei was acting as Dynamic/Sabella's "client representative" at the time. (*Appellants' Mot.* 9–12.)

To that end, Appellants seek to bring California law into this federal bankruptcy proceeding in two ways: (1) by arguing that the bankruptcy court erred by applying the federal common law of privilege, and not California privilege law, to determine the scope of attorney-client privilege in response to the bankruptcy court's Rule 2004 subpoenas (*Appellants' Mot.* 9–15); and (2) by arguing that, even if federal common law is applied, principles of comity dictate that California privilege law be used to "fill the gaps" and extend a federal privilege where none previously existed (*Id.* 16–18).

Showing a "likelihood of success" requires that the movant raise questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry. <u>County of Alameda v. Weinberger</u>, 520 F.2d 344, 349 n.12 (9th Cir. 1975).

The Court finds that Appellants have not raised such questions.

Appellants constantly intone that "the Order turns on a narrow and complex

issue of law involving states' right, comity, federalism, and vertical choice of law issues." The Court, however, finds that the privilege question is clearly determined by federal common law, and that the bankruptcy court very likely properly applied the federal common law of privilege to the facts of the dispute.[8]  That is, whether or not the California Evidence Code and California case law privileges Lei's communications is irrelevant; Appellants have not shown that any argument in favor of applying or importing the broader California "client representative" privilege stands a fair chance of success.

> ### 1. The Law is Well-Settled that the Federal Common Law of Privilege Applies to Subpoenas Issued Pursuant to Federal Rule of Bankruptcy Procedure 2004

Appellants first argue that the bankruptcy court erred in not applying California privilege law pursuant to Federal Rule of Evidence 501.  (*Appellants' Mot.* 12.) Specifically, Appellants argue that California law controls because the "primary issue" underlying the discovery dispute concerns the Trustee's intent to glean information to support a claim or defense where California law would supply the rule of decision. (*Appellant's Mot.* 13–14.)  Appellants then run through various scenarios in which the information the Trustee seeks could be used to invoke California law and prove usury and holder in due course claims and determine claim amounts.  (*Id.* 15.)

The Trustee contends, in response, that the bankruptcy court is a federal proceeding where the federal law of privilege, favoring admissibility, is controlling.

---

[8]Appellant also plucks the following line from Judge Bowie's order denying the stay to bolster their "likelihood of success" argument:

> This case has been an interesting case and I've wrestled with this particular motion for a couple of reasons.  One is because, philosophically, it's always an intriguing question when you have a test that requires a deciding judge to decide whether there's, you know, whatever standard you choose to call it; a probability or likelihood that I am wrong.

(*Appellant's Request for Judicial Notice* 306.)  Judge Bowie's comments, however, only suggest that he gave careful thought to the issue before ruling on it, not that it is likely that he decided the issue wrongly or it was an especially close call.

1  (*Trustee's Opp'n* 10.)  Moreover, the Trustee contends that it is "hornbook law" that

2  discovery in connection with a Rule 2004 proceeding is governed by the federal law of

3  privilege.

4        Federal Rule of Evidence 501 states that the federal common law of privilege

5  applies when federal law determines the substantive rights of the parties. Fed. R. Evid.

6  501; accord United States v. Zolin, 491 U.S. 554, 562 (1989). On the other hand, the

7  state privilege law controls if the underlying claim or defense is governed by state law.

8  Fed. R. Evid. 501; Star Editorial v. United States Dist. Court, 7 F.3d 856, 859 (9th Cir.

9  1993).

10        An examination under Bankruptcy Rule 2004 is nonadversarial in nature and

11  aimed at discovering evidence upon which future causes of action may be based and is

12  therefore governed by bankruptcy law rather than state substantive law.[9] See Hon.

13  Barry Russell, Bankruptcy Evidence Manual § 501.3 (West 2006) (collecting cases).

14  Thus, if a subpoena is issued in connection with a Rule 2004 examination, federal

15  common law rules of privilege will apply. Id.; In re: Asia Global Crossing, Ltd., 322 B.R.

16  247, 254–55 (Bankr. S.D.N.Y. 2005); In re: Rafsky, 300 B.R. 152, 154 (Bankr. D.

17  Conn. 2003); In re: Bautista, 2007 Bankr. LEXIS 4170, at *3–4 (N.D. Cal. Dec. 10,

18  2007).

19        Federal privilege law will control even if the evidence sought is relevant to both

20  the federal and state claims.  Bulow v. Bulow, 811 F.2d 136, 140 (2d Cir. 1987).  In

21  such situations, courts consistently have held that the asserted privileges are governed

22  by the principles of federal law. Id.; see also Agster v. Maricopa County, 422 F.3d 836,

23  839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law

24  claims present, the federal law of privilege applies.").  It is only where a discrete

25  bankruptcy adversary proceeding involves litigants squaring off solely under state law

26  _____

27        [9]It is well established that the scope of a Rule 2004 examination is exceptionally broad and provides few of the procedural safeguards found in Federal Rule of Civil Procedure 26. In re: Rafsky, 300 B.R. at 153 n.2.  Examinations under Rule 2004 are allowed for the "purpose

28  of discovering assets and unearthing frauds" and have been compared to a "fishing expedition." Id.

08cv1194W

1  claims will Rule 501 require reference to state privilege law. See In re: Couch, 80 B.R.
2  512, 514–16 (S.D. Cal. 1987) (applying California privilege law to bankruptcy
3  proceeding where Trustee had filed direct action for claims under California Insurance
4  Code); In re: Tidewater Group, Inc., 65 B.R. 179, 181 (Bankr. N.D. Ga. 1986)
5  (applying state privilege law in adversary proceeding concerning solely state tort and
6  contract law issues).

7      Here, the Trustee's subpoena, authorized by the bankruptcy court, requested
8  documents from Lei pursuant to Bankruptcy Rule 2004. (Bankr. Doc. No. 509, 510;
9  *Bankr. Court's Order on Trustee's Mot. to Compel Disc.* 2.) The law is uniform in that the
10  federal common law of privilege, and not state law, applies to attorney-client privilege
11  objections in response to Rule 2004 subpoena requests. See In re: Asia Global Crossing,
12  Ltd., 322 B.R. 247, 254–55 (Bankr. S.D.N.Y. 2005) (applying federal common law of
13  privilege); In re: Rafsky, 300 B.R. 152, 154 (Bankr. D. Conn. 2003) (same); In re:
14  Bautista, 2007 Bankr. LEXIS 4170, at *3–4 (N.D. Cal. Dec. 10, 2007) (same); Hon.
15  Barry Russell, Bankruptcy Evidence Manual § 501.3 (West 2006) (collecting cases).
16  Clearly, the bankruptcy court properly applied Federal Rule of Evidence 501 and did
17  not err in analyzing Appellant's attorney-client privilege claims under federal common
18  law.

19      Although Appellants argue that applying federal privilege law is improper
20  because the Trustee seeks information which could support state law claims, it is well-
21  settled that Rule 2004 discovery enjoys a broad scope, regardless of any background
22  state law issues. See In re: Rafsky, 300 B.R. at 153 n.2; see also In re: Asia Global
23  Crossing, Ltd., 322 B.R. at 254 ("Even if the Trustee ultimately intends to pursue state
24  law claims, federal law nonetheless controls the privilege."). When the subpoena
25  issued, the Trustee was not locked in a direct adversary proceeding with Appellants that
26  concerned only state law issues—rather, the Appellants' and Trustee's direct claims
27  were filed a year later. See In re: Int'l Horizons, Inc., 689 F.2d 996, 1003 (11th Cir.
28  1982) (applying federal law because the bankruptcy proceeding did not yet involve state
   claims). All of Appellants' authority involves subpoenas that did not issue in

- 11 -

connection with Rule 2004 or where direct state law claims (the merits of which had little to do with the underlying bankruptcy) had already been filed.  To the extent Appellants try to distinguish the Trustee's precedent, Appellants either assert that the cases were "wrongly decided" or "misread." (*Appellants' Mot.* 14, 14 n. 23.)  In sum, the law is clear—the federal common law of privilege applies to privilege objections to the Trustee's Rule 2004 subpoena.

### 2.   Appellants Have Not Shown It Is Likely That Principles of Comity Warrant Injecting California Privilege Law Into The Federal Common Law of Privilege

Appellants argue that, even if federal common law is applied, judicial comity dictates that federal courts should take into account the view of state authorities. (*Appellants' Mot.* 16.)  Thus, California law should be considered in deciding whether to extend an attorney-client privilege to a "client representative" like Lei. (*Appellants' Mot.* 17.)  Appellants find it troubling that the bankruptcy court overlooked favorable California law and instead applied "the [narrower privilege] laws from New York, Connecticut, Florida, and Michigan." (*Id.* 1.)  Because California law would insulate Lei's communications with Sabella's counsel as a "client representative," Appellants contend, the bankruptcy court erred in applying law which did not so extend the privilege to protect Lei's communications. (*Id.* 9–12.)

Courts recognize that, for more than three centuries, there has existed a fundamental maxim that "the public has the right to every man's evidence." United States v. Bryan, 339 U.S. 323, 331 (1950).  Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth. Exxon Shipping Co. v. United States Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994) (citing United States v. Nixon, 418 U.S. 638, 710 (1974)).  One well-recognized exception to the fundamental maxim, however, is the attorney-client privilege.  In the Ninth Circuit, the attorney-client privilege is strictly construed. United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

Because the Federal Rules of Evidence do not define the scope of the attorney-client privilege, courts start with proposed Federal Rule of Evidence 503 ("Supreme Court Standard 503") in analyzing the extent of the attorney-client privilege under federal law:[10]

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself *or his representative* and his lawyer or his lawyer's representative[...], or (4) between *representatives of the client* or between the client and a *representative of the client.*

(*Bankr. Court's Order on Trustee's Mot. to Compel Disc.* 4–5 (citing Supreme Court Standard 503(b)) (emphasis added).) Supreme Court Standard 503 does not define "representative of the client," and the Advisory Committee Notes suggest that "the matter is better left to resolution by decision on a case-by-case basis." Weinstein & Berger, Weinstein's Federal, at § 503App.01.

To date, however, a federal "client representative" extension of the attorney-client privilege has only been recognized in two situations: (1) where the client is a corporation and requires communication on its behalf, see Memry Corp. v. Ky. Oil Tech. N.V., No. 04-3843, 2007 U.S. Dist. LEXIS 3094 (N.D. Cal. January 4, 2007) (adopting test set forth in In re: Beiter Co., 16 F.3d 929 (8th Cir. 1994));[11] and (2) where the client is an individual and is either disabled or is in some unique position requiring another to intervene between the client and counsel, see Leone v. Fisher, No. 05-CV-521, 2006 WL 2982145 (D. Conn. Oct. 18, 2006). In the second situation, the Leone court reviewed relevant state and federal decisions and decided, for the client representative extension to apply to an individual, it must be: (1) related to the subject matter of the underlying attorney-client relationship; (2) necessary to effectuate the

---

[10]Commentators suggest that proposed Federal Rule of Evidence 503 outlines the federal common law on attorney-client privilege. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal § 503.02 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006); accord Leone v. Fisher, No. 05-CV-521, 2006 WL 2982145 (D. Conn. Oct. 18, 2006).

[11]In the bankruptcy proceedings, both parties agreed that should federal law apply, and should Lei be considered a client-representative of Dynamic, Memry Corporation and In re: Beiter were controlling.

08cv1194W

1 representation; and (3) could not have been communicated by the client herself. Id.
2 at *5.

3       It is important to note that nowhere in Appellants' moving papers do they argue
4 that they are likely to succeed on the merits because the bankruptcy court got the facts
5 wrong. Here, the bankruptcy court found—and Appellants do not here dispute—that
6 Lei dealt with the individual Sabella, and not the corporation Dynamic.[12] Thus, the
7 second, or Leone, situation was implicated. (Bankr. Court's Order on Trustee's Mot. to
8 Compel Disc. 6–7.) Further, the bankruptcy court found—and Appellants do not here
9 dispute—that Sabella had no disability or was in no unique position which required Lei
10 to communicate with Sabella's counsel on her behalf. (Id. 8–9.) Taken together, this
11 compelled the conclusion that the correspondence between Lei and Sabella's counsel
12 was not protected by a federally-recognized client representative extension of the
13 attorney-client privilege.  Upon review, this Court finds it very likely that the
14 bankruptcy court properly analyzed relevant federal precedent and properly constrained
15 the attorney-client privilege in accordance with the federal and Ninth Circuit law on
16 privileges.

17       Appellants mistakenly argue that because there was a "void" in the federal
18 common law, the bankruptcy court should have simply applied California law as a
19 matter of comity.  There are two problems with this argument.  First, the bankruptcy
20 court did properly apply existing federal common law of client-representative
21 privilege—Leone—to the facts of the case.  Although Leone reviews state court
22 decisions in determining the privilege's reach, Leone is still persuasive authority as
23 federal common law.[13]  While precedent is scant, federal common law simply has not

24 ───────────────────────

25       [12]In dicta, the bankruptcy court also provided an independent basis for compelling
disclosure under the Memry Corporation test. It found that Lei's relationship with Dynamic,
26 if one existed at all, was too tenuous for Lei to be labeled a "client representative" of the
corporation. Thus, Memry Corporation's federally recognized "client representative" extension
27 of the attorney-client privilege did not attach. (Bankr. Court's Order on Trustee's Mot. to
Compel Disc. 9.)

28       [13]The legislative history to Federal Rule of Evidence 501 makes clear that "[w]hen a
federal court chooses to absorb state law, it is applying the state law as a matter of federal
common law. Thus the state law does not supply the rule of decision (even though the federal

extended the client-representative privilege as far as California law has.

Nor did <u>Leone</u> or the bankruptcy court likely err in considering <u>Hendrick v. Avis Rent-a-Car Sys., Inc.</u>, 944 F. Supp. 187 (W.D.N.Y. 1996), <u>Gerheiser v. Stephens</u>, 712 So.3d 1252 (Fla. Ct. App. 1998), or <u>Grubbs v. K-Mart Corp.</u>, 411 N.W.2d 477 (Mich. Ct. App. 1987), all of which relied on state privilege law. Where federal authority is wanting, federal courts may look to authoritative state court decisions and statutes when deciding whether to recognize a new privilege or amend the coverage of an existing one. <u>Jaffee v. Redmond</u>, 518 U.S. 1, 12–13 (1996) (citing <u>Trammel v. United States</u>, 445 U.S. 40, 48–50 (1980)). Faced with a dearth of federal precedent, blindly resorting to *only* the forum state's privilege law is inappropriate. Appellant has not shown that California law is in accord with most states, or that it is likely that the federal common law would be advanced by the injection of California's broadened view of the client-representative extension of attorney-client privilege.[14] Fed. R. Evid. 501 (stating that federal courts should recognize evidentiary privileges according to the principles of the common law in the light of reason and experience); see also <u>Trammel</u>, 445 U.S. at 50 (holding that a party seeking a new privilege must overcome a significant burden of establishing that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth); <u>Carman v. McDonnell Douglas Corp.</u>, 114 F.3d 790, 793 (8th Cir. 1997) (recognizing that evidentiary privileges are "not lightly created").

Second, where Appellants seek to import a California privilege into a federal bankruptcy proceeding, Appellants likely overstate the case for comity. There is indeed authority for the proposition that federal courts should recognize state privileges where this can be done at no substantial cost to federal policies. See <u>In re: Int'l Horizons</u>, 689 F.2d at 1004 (collecting cases); <u>Leon v. County of San Diego</u>, 202 F.R.D. 631, 635

---

court may apply a rule derived from state decisions)...." H.R. Rep. No. 1597, 93d Cong., 2d Sess (1974), U.S. Code Cong. & Admin. News 1974, 7051, 7101.

[14]Moreover, considering <u>Leone</u>, importing California's "client representative" privilege into the federal common law would be inviting a split of federal authority.

(S.D. Cal. 2001); (*Appellants' Mot.* 16–17.)  Bankruptcy Rule 2004, however, reflects a strong federal interest in allowing a court to gain a clear picture of the condition and whereabouts of the estate and to examine witnesses having knowledge of a debtor's acts, conduct, liabilities, assets.  See, e.g., In re: Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984).  Importing California's broad client-representative privilege would likely significantly undermine the important federal interest in assuring complete and accurate disclosure in federal bankruptcy proceedings.  See In re: Int'l Horizons, 689 F.2d at 1005 (declining to recognize Georgia's accountant-client privilege in bankruptcy proceedings); In re: Rafsky, 300 B.R. at 154 (finding that recognizing Connecticut's marital privilege would contradict controlling federal bankruptcy law and policy). Therefore, the Court finds it likely that considerations of comity do not require us to embrace California's broad client representative privilege.  See also In re: Int'l Horizons, 689 F.2d at 1005 n.19 (collecting cases).

In sum, it is crystal clear that the federal common law of privilege applies to objections to Rule 2004 subpoena requests.  Likewise, Appellants have not shown that they are likely to succeed in showing that California's broad "client representative" privilege should be incorporated into the federal common law of attorney-client privilege.  Rather, it appears the bankruptcy court properly applied Leone, which is persuasive federal authority on the issue.  Given the above, Appellants have not shown a likelihood of success on the merits and the Court thereby **DENIES** Appellants' motion to stay the bankruptcy court's Order pending appeal.

### C.    The Possibility of Irreparable Harm Does Not Entitle Appellant to a Stay Pending Appeal

Appellants contend that they will be irreparably harmed if a stay does not issue because the Court will be unable to undo the effect of improper disclosure, even if it eventually grants Appellants' appeal.  (*Appellants' Mot.* 18.)  Appellants' arguments are nicely summarized by In re: Napster, 479 F.3d 1078, 1088 (9th Cir. 2007)'s euphemism that "once the cat is already out of the bag, it may not be possible to get it back in."

1     (*Appellants' Mot.* 19, *Appellants' Reply* 1.)

2        The Trustee argues that merely pointing to the possibility of irreparable harm is

3     not sufficient to warrant an automatic stay. (*Trustee's Opp'n* 18.) If this were the law,

4     the Trustee contends, there would no reason for the four-prong test, for every appellant

5     could make a meritless privilege claim in order to obtain a "free pass" to a stay. (*Id.*)

6     The Trustee also points out the bankruptcy court's concerns over the ongoing delay in

7     this case and argues that a stay would harm the bankruptcy estate. (*Id.*)

8        The Court agrees with the Trustee. As mentioned above, an appellate court

9     must view the possibility of irreparable harm differently when reviewing a final

10    determination on the merits rather than a preliminary determination not on the merits.

11    Appellants have had three chances in front of two courts to argue extending the

12    California client representative privilege into federal court: first by opposing the motion

13    to compel, then by petitioning the bankruptcy court for a stay, and finally by the instant

14    motion. At this point, the argument that potentially privileged documents might be

15    disclosed is less powerful when one ruling has already found the privilege inapplicable,

16    and two rulings have found it unlikely that the issue was wrongly decided. Because

17    Appellants have not shown a likelihood of success on the merits, the slim possibility

18    that the cat might jump out of the bag does not operate to automatically warrant a stay

19    under the facts of this case.[15]

20

21   **IV.**    CONCLUSION

22        In conclusion, the Court finds that Appellants have not shown that they are

23    likely to succeed on the merits of their appeal because federal common law applies to

24    Appellants' privilege claims, and Appellants have not shown that it is likely that federal

25

26        [15]In regards to the third factor, the Trustee's harm absent a stay, the Court accepts the bankruptcy court's concerns regarding Lei's and Appellants' continued delay in the case, even

27    though the bankruptcy estate is in cash. In regards to the final factor, serving the public interest, the Court finds that while the public interest in confidential attorney-client

28    communications is great, <u>United States v. Chen</u>, 99 F.3d 1495, 1499 (9th Cir. 1996), in light of a federal court's unlikeliness to import California's client representative privilege, the public interest in the just, speedy, inexpensive, and accurate determination of every bankruptcy case is greater. Fed. R. Bankr. Proc. 1001, 2004.

08cv1194W

law recognizes California's broader individual "client representative" extension of attorney-client privilege.  Although there is the possibility that Appellants will be irreparably harmed should privileged documents be disclosed pending appeal, under the circumstances of this case the quantum of harm is not sufficient to outweigh the unlikelihood of success on the merits.  When also considering the great delay since the Trustee first moved to compel, the Court finds that the public interest in speedy and accurate bankruptcy proceedings warrants **DENYING** the application for stay of the bankruptcy court's Order.

   **IT IS SO ORDERED.**


**DATE: July 25, 2008**

_____
HON. THOMAS J. WHELAN
United States District Court
Southern District of California

08cv1194W